No. 54,743

UNIFIED SCHOOL DISTRICT #407 By Virgil E. Boatwright, Super-
intendent, *Plaintiff-Appellee,* v. LEE FISK and JAY B. THIELEN,
*Defendants-Appellants,* v. JACK STOLLER, *Defendant-Appellee.*

(660 P.2d 533)

Opinion filed
February 19, 1983.

*Michael S. Holland,* of Russell, argued the cause and was on the briefs for Lee
Fisk and Jay B. Thielen, defendants-appellants.

*Don C. Staab,* of Hays, argued the cause and was on the brief for plaintiff-ap-
pellee, Unified School District #407 by Virgil E. Boatwright, Superintendent.

*John C. Woelk,* of Woelk, Culley and Ehrlich, of Russell, argued the cause and
was on the briefs for defendant-appellee, Jack Stoller.

The opinion of the court was delivered by

HOLMES, J.: This is an appeal by various parties from rulings of
the district court in a declaratory judgment action. The action
was originally filed on behalf of Unified School District #407,
seeking a determination of the number of votes necessary by a
school board to legally appoint new members to fill vacant
positions created by the resignation of one or more members of
the school board and a determination of whether a school board
may, at a regular meeting, conduct business which is not listed
on the published agenda.

As is often heard at sporting events, you can't tell the players without a program. We will try to set forth the cast of characters in this proceeding and the facts that have led them to this court. Prior to this controversy, the school board of U.S.D. #407 consisted of the following members:

Position 1    Don Brungardt
Position 2    Cecil Mashburn
Position 3    Elmer Svaty
Position 4    Lynda Keys
Position 5    Charles Willson
Position 6    Richard Reeves
Position 7    Robert McCobb

On February 8 or 9, 1982, Robert McCobb's resignation from position 7 was accepted by the board. On or about April 26, 1982, Elmer Svaty's resignation from position 3 was accepted. At the regular meeting of the board held on May 10, 1982, all of the remaining five members were present and a motion was made and seconded that Lee Fisk be appointed to fill position 7 on the board. The vote for Mr. Fisk to fill that vacancy was three to two in his favor. On June 3, 1982, Mr. Fisk filed his oath of office with the election commissioner. K.S.A. 25-2024.

On June 10, 1982, this action was filed on behalf of U.S.D. #407 for a determination of whether a three to two vote of a five-member school board was sufficient to legally name Mr. Fisk to fill position No. 7.

Thereafter, while the suit to determine Mr. Fisk's status was pending, and at the next regular meeting of the school board on June 14, 1982, it was moved and seconded that Mr. Jack Stoller be appointed to fill position No. 3. The vote was again three to two, this time in favor of Mr. Stoller. Mr. Fisk, although notified of the time and place of the meeting, did not attend and therefore did not participate in the vote on Mr. Stoller. Later, during the same meeting, board member Charles Willson, position No. 5, resigned his position. At that point, the board was composed of four of the original members and perhaps Fisk and Stoller. On June 21, 1982, the district court held that Mr. Fisk had been duly appointed to position No. 7. On June 22, 1982, Mr. Stoller filed his oath of office. On June 29, 1982, at the next regular board meeting, certain members of the board were of the opinion that as there were six members of the board at the time the vote was

taken on Mr. Stoller on June 14, 1982, the three to two vote did not constitute a majority of the six-member board and was insufficient and a new vote was taken to fill position No. 3. At this meeting, due to the prior resignation of Mr. Willson, and the district court affirmance of Mr. Fisk, the board was back to five members with the appointment of Mr. Stoller still up in the air. The names of Jay B. Thielen and Jack Stoller were placed before the board and Mr. Thielen was appointed to fill position No. 3 by a three to two vote. Mr. Stoller did not participate in this meeting.

On July 14, 1982, the matter again came before the district court for a determination of whether Mr. Stoller, as a result of the June 14, 1982, vote, or Mr. Thielen, as a result of the June 29, 1982, vote, or either of them, was duly appointed to position No. 3. The court held that Mr. Stoller had been duly appointed to position No. 3 at the June 14, 1982, board meeting. Various parties have appealed from the two court judgments affirming the appointments of Fisk and Stoller. U.S.D. #407 has appealed all rulings of the court solely for the purpose of having a final determination of whether Fisk, Stoller or Thielen, or any of them, are duly appointed members of the school board, and whether a school board may conduct business, at a regular meeting, which was not included in a published agenda. Mr. Fisk and Mr. Thielen appeal from the court's judgment that Mr. Stoller was appointed to position No. 3, and Mr. Stoller appeals from the judgment that Mr. Fisk was appointed to position No. 7. Fisk and Thielen also appeal from the court's holding that the published agenda for a regular meeting of the school board may be amended at the meeting.

To further complicate the cast of characters in this action, original board members Cecil Mashburn, position No. 2, and Richard Reeves, position No. 6, were recalled from office at a special election held November 2, 1982. Thus, at this point we have two original board members, Mr. Fisk claiming position No. 7, and both Mr. Stoller and Mr. Thielen claiming position No. 3. Positions 2, 5 and 6 remain vacant. In order that the school board could carry on day-to-day functions, and to prevent the schools from being closed, this court entered an emergency order on the 19th day of November, 1982, authorizing the two remaining original members, along with Mr. Fisk and Mr. Stoller, to carry on the day-to-day routine business of the board.

With the facts as set forth above, we now turn to the issues before the court. They are: (1) does a school board have authority to consider matters at a regular meeting which are not contained in a previously prepared and released agenda, and (2) how many votes are required to fill a vacancy on a school board?

In considering the first issue, defendants-appellants Fisk and Thielen contend that as the matter of the filling of position No. 3 was not included in the advance agenda for the June 14, 1982, meeting, the action of the board in voting three to two to appoint Mr. Stoller was void. It is the position of these appellants that once a public agenda has been prepared and published, the board can take no action on any matter not contained in the agenda. They rely upon certain written internal policies of the board and the open meetings statute, K.S.A. 1982 Supp. 75-4318. The statute provides in pertinent part:

"(a) Except as otherwise provided by state or federal law or by rules of the house or senate, and except with respect to any impeachment inquiry or other impeachment matter referred to any committee of the house of representatives prior to the report of such committee to the full house of representatives, all meetings for the conduct of the affairs of, and the transaction of business by, all legislative and administrative bodies and agencies of the state and political and taxing subdivisions thereof, including boards, commissions, authorities, councils, committees, subcommittees and other subordinate groups thereof, receiving or expending and supported in whole or in part by public funds shall be open to the public and no binding action by such bodies shall be by secret ballot, but any administrative body that is authorized by law to exercise quasi-judicial functions shall not be required to have open meetings when such body is deliberating matters relating to a decision involving such quasi-judicial functions.

"(b) *Notice of the date, time and place of any regular or special meeting of a public body designated hereinabove shall be furnished to any person requesting such information* . . . .

. . . .

"(d) *Prior to any meeting hereinabove mentioned, any agenda relating to the business to be transacted at such meeting shall be made available to any person requesting said agenda.*" (Emphasis added.)

The board's written rules for the organization and procedures of the school board provide that "the superintendent shall make an agenda for each regular meeting and shall mail a copy of each agenda to each member of the Board of Education." The procedural rules also provide the agenda will be released to the news media no later than 5:00 p.m. on the Friday before the day of the regular meeting.

Appellants Fisk and Thielen take the position that Mr. Fisk had the right to rely upon the published agenda for the June 14, 1982, meeting which Fisk did not attend. He contends he remained away from the meeting to avoid further complications as his status had not been finally determined by the district court. He claims, however, that if he had known that the matter of filling position No. 3 was to be considered, he would have been present.

We note at the outset that K.S.A. 1982 Supp. 75-4318 contains no requirement that a public body prepare and publish an agenda. The statute merely provides that *if* an agenda is prepared prior to any meeting, it shall be made available to any person requesting it. The statute also mandates that notice of the date, time and place of any meeting shall be furnished to any person requesting that information. See Smoot and Clothier, *Open Meetings Profile: The Prosecutor's View,* 20 Washburn L.J. 241, 269 (1981). In addition, it is clear that the usual procedures of U.S.D. #407 called for an item on the agenda designated "consent calendar" and, at the beginning of each regular meeting, additions or deletions could be made in the published agenda. This had been a standing procedure of the board followed at all regular meetings. At the meeting of June 14, 1982, the matter of considering an appointment to fill position No. 3 was raised as an item on the consent calendar, and was approved by a unanimous vote of the five members present.

Appellants rely upon two California cases in addition to their argument that K.S.A. 1982 Supp. 75-4318, together with the board's rules of procedure, preclude any amendment of the published agenda. In *Santa Barbara School Dist. v. Superior Court,* 13 Cal. 3d 315, 335-36, 118 Cal. Rptr. 637, 530 P.2d 605 (1975), and *Carlson v. Paradise Unified School Dist.,* 18 Cal. App. 3d 196, 199-200, 95 Cal. Rptr. 650 (1971), the California courts found that the school districts were under an agenda requirement as a matter of law. Because the education code imposed an agenda notice requirement on the district, the boards were unable to amend the agenda or otherwise circumvent the requirement. The only requirement in the instant case is that contained in the board's own rules of procedure which requires the superintendent to prepare and make public an agenda. Defendant-appellant Stoller, on the other hand, relies upon the

so-called New Jersey rule as set forth in *Crifasi v. Governing Body of Oakland*, 156 N.J. Super. 182, 383 A.2d 736 (1978). In *Crifasi* the court stated:

"We conclude that the trial judge's construction of the Sunshine Law to the effect that where an agenda is issued as to a regular meeting only matters listed thereon may be considered, would lead to an anomalous result, *i.e.*, that while a public body which holds a regular meeting without an agenda at all may act upon any matter, public bodies which have, without statutory compulsion, published a separate agenda for such meetings, would be limited to the matters listed in that agenda. Such a rule would encourage public bodies not to issue any agendas for regular meetings, thus defeating the legislative purpose of increasing the public's awareness of governmental processes, *Polillo v. Deane, supra* [74 N.J. 562 (1977)].

"Of course, if it can be shown that the omission in an agenda for a regular meeting was intentional and was designed to deceive the public, a statutory violation thereby arises. No statute should be construed so as to permit its purpose to be defeated by evasion." p. 187.

We agree with the reasoning of the New Jersey court. Nothing in our statutes requires a board of education to prepare and publish an agenda and, if having done so, we find nothing to prevent an amendment of the agenda at the time of the meeting. The court in the instant case found that the agenda furnished the board members was not misleading and that although Mr. Fisk was under a duty to attend the meeting (K.S.A. 1982 Supp. 72-8205), he "simply exercised his own prerogative not to attend based on his independent, but what he later found out to be erroneous, judgment as to what may transpire at the meeting."

We also note that K.S.A. 1982 Supp. 72-8205 provides that if a school board calls a special meeting then written notice of the time, place and purpose of the meeting shall be given to all members and "no business other than that stated in the notice shall be transacted at such meeting." There are no such restrictions for regular meetings of the board.

We hold that absent a statute or board rule specifically prohibiting the right of a school board to amend its previously published agenda, such agenda may be amended and supplemented at any regular meeting of the board in the same manner as other business of the board is conducted.

The next point involves the legality of the appointment of Mr. Fisk by a three to two vote of a five-person board and the appointment of Mr. Stoller by the same vote of a six-person

board, assuming Mr. Fisk's appointment was valid. Several statutes must be considered, which provide as follows:

"72-8205 [1982 Supp.]. **Boards of education; meeting times; quorum; abstention from voting; general powers; legal counsel for officers and employees.** (*a*) The board shall meet at least once each month. At some time during the month of July of each year, the board shall adopt a resolution specifying a regular meeting time of the board and such resolution shall specify the regular hour of commencement of the meeting, as well as the day of the week and the week of the month. Such resolution shall also provide that if the regular meeting date occurs on a Sunday or on a legal holiday or on a holiday specified by the board, such regular meeting shall be held on the day following commencing at the same hour. Such resolution shall also specify the regular meeting place of the board and may specify that any regular meeting may be adjourned to another time and place. Special meetings may be called at any time by the president of the board or by joint action of any three members thereof. Written notice, stating the time and place of any special meeting and the purpose for which called, shall, unless waived, be given each member of the board at least two days in advance of the special meeting and no business other than that stated in the notice shall be transacted at such meeting. *A majority of the full membership of the board shall constitute a quorum for the purpose of conducting any business of the school district, and the vote of a majority of the full membership of the board shall be required for the passage of any motion or resolution.* Any member who abstains from voting shall be counted as having voted against the motion or resolution. If a member announces a conflict of interest with regard to the issue, the member may leave the meeting until the voting on the issue is concluded and the member who abstains from voting thereby shall not be counted as having voted." (Emphasis added.)

"25-2022. **Vacancies on boards of education filled by appointment; publication of notice; term of appointee.** *Any board shall have power to fill by appointment any vacancy which occurs thereon,* and such appointee shall serve the unexpired term. When a vacancy occurs, the board shall publish a notice one time in a newspaper having general circulation in the school district stating that the vacancy has occurred and that it will be filled by appointment by the board no sooner than fifteen (15) days after such publication. If such vacancy occurs before January 1 of an odd-numbered year leaving an unexpired term of more than two years such appointee shall serve until the July 1 after the following general school election as provided in K.S.A. 25-2023 or any amendments thereto.

"In the latter event, the unexpired term of two years commencing July 1 after the following general school election shall be filled at such election and the ballots or ballot labels and returns of election with respect to such office shall be designated as follows: 'To fill the unexpired term.'" (Emphasis added.)

"25-2022b. **Excessive vacancies on boards of education; appointments made by governor.** Whenever the membership of any board of education shall by resignation, death, removal from office or otherwise be reduced to a number less than four (4), the governor shall appoint to such board of education sufficient members so that the membership of the board of education totals four (4). When the membership of such board of education has been restored to four, such four members shall, within six (6) months, appoint members to fill the remaining vacancies in the manner provided in K.S.A. 25-2022. Members appointed under

the authority of this section shall be appointed for the unexpired term in the manner provided in said K.S.A. 25-2022. Vacancies on a board of education subject to the provisions of this act shall be certified to the governor by the clerk of the board of education."

"77-201. **Rules of construction.** In the construction of the statutes of this state the following rules shall be observed, unless such construction would be inconsistent with the manifest intent of the legislature or repugnant to the context of the statute:

. . . .

*Fourth.* Words giving a joint authority to three or more public officers or other persons shall be construed as [giving] such authority to a majority of them, unless it be otherwise expressed in the act giving the authority."

It is the position of all three defendants that K.S.A. 1982 Supp. 72-8205, which requires a vote of at least four members of the board for the passage of any motion or resolution, is not applicable to the filling of vacancies for the reason that K.S.A. 25-2022 is a special statute granting specific powers to the board in one limited area while K.S.A. 1982 Supp. 72-8205 is a general statute granting broad general powers to the board. As K.S.A. 25-2022 contains no express provision as to the vote required, it is argued that under K.S.A. 77-201 a majority of a quorum is all that is required when voting to fill a vacancy. The plaintiff school district, while not taking any particular position, has pointed out that K.S.A. 1982 Supp. 72-8205 may be the controlling statute. If this be true then none of the three defendants was duly appointed as none of them received four votes.

Appellants contend that when K.S.A. 1982 Supp. 72-8205 is compared with the election statutes in Article 20 of Chapter 25 and K.S.A. 77-201, an ambiguous situation has been created by the statutes. Does K.S.A. 1982 Supp. 72-8205 require that the filling of vacancies under K.S.A. 25-2022 may only be done by an affirmative vote of at least four of the remaining members of a school board? We think it does.

In determining the question before the court, certain basic rules of statutory construction apply.

"The fundamental rule of statutory construction, to which all other rules are subordinate, is that the purpose and intent of the legislature governs when that intent can be ascertained from the statutes. In determining legislative intent the court may properly look to the purpose to be accomplished, and the necessity and effect of the statute." *In re Adoption of Trent,* 229 Kan. 224, Syl. ¶ 1, 624 P.2d 433 (1981).

"[A] general and specific statute should be read together and harmonized wherever possible." *State v. Makin,* 223 Kan. 743, 745, 576 P.2d 666 (1978).

"Statutes *in pari materia* should be read together and harmonized, if possible, to the end that all may be given force and effect." *City of Overland Park v. Nikias,* 209 Kan. 643, Syl. ¶ 1, 498 P.2d 56 (1972).

K.S.A. 1982 Supp. 72-8205 and K.S.A. 25-2022 both deal with the powers and procedures of school boards and therefore are said to be in pari materia. Black's Law Dictionary 898 (4th ed. rev. 1968).

In attempting to determine the legislative intent behind the various statutes in question, K.S.A. 25-2022b is informative. This statute provides that if the membership of a school board shall be reduced to less than four "the governor shall appoint to such board of education sufficient members so that the membership of the board of education totals four." The statute then provides that the four members shall, within six months, appoint members to fill the remaining vacancies in the manner provided by K.S.A. 25-2022. It appears obvious that the statute authorizes the governor to bring the board up to minimum strength required to conduct the business of the board under K.S.A. 1982 Supp. 72-8205. In such a situation, must all four members be unanimous in their choice before another member may be appointed? Appellants argue such a construction of the statute would be blind to the realities of life, particularly when there is bitter disagreement among the remaining board members as often occurs and as has apparently occurred in U.S.D. #407. However, the same argument could be made of any board that lacked seven members. We do not adopt the argument that one or more of the members of a four-person board will refuse to perform the duties the office and refuse to cooperate in bringing the board to full membership.

Appellants contend K.S.A. 25-2022 is a special statute granting the board specific power to act in a specific situation and as such takes precedence over the requirements and restrictions of K.S.A. 1982 Supp. 72-8205, which is a general statute granting the board broad powers for the ordinary conduct of the business affairs of the school district. *Thomas v. Board of Trustees of Salem Township,* 224 Kan. 539, 545, 582 P.2d 271 (1978); *Continental Ins. Co. v. Windle,* 214 Kan. 468, 472, 520 P.2d 1235 (1974).

We have no quarrel with the rule of law advanced by appel-

lants but find it inapplicable. When all the statutes are read together, as they must be, we find no ambiguity or conflict. K.S.A. 1982 Supp. 72-8205 is specific in its requirements that the vote of a majority of the full membership of the board is required for the passage of any motion or resolution. There is no contention that the words "the full membership of the board" refers to anything less than seven persons and we agree with that position. K.S.A. 25-2022, which grants authority to the board when it consists of four or more, does not specify the vote necessary to fill a vacancy. There is no reason for it to do so. When read in connection with the statute giving the board its general authority and power, it appears obvious that a vote of four or more is required to fill a vacancy. There was no reason for the legislature to spell out in K.S.A. 25-2022 such a requirement when it is already contained in K.S.A. 1982 Supp. 72-8205. Likewise, K.S.A. 77-201 has no application when the board's actions and power are already controlled by K.S.A. 1982 Supp. 72-8205. If it can be said that K.S.A. 25-2022 is a special statute taking precedence over K.S.A. 1982 Supp. 72-8205, then certainly K.S.A. 1982 Supp. 72-8205, which governs the specific authority, restrictions and powers of a school board, is a special statute when compared to K.S.A. 77-201, which is a general rule of statutory construction.

It would be totally incongruous to say that four affirmative votes of a school board are required to approve day-to-day operations including such minor matters as approval of purchases of supplies and on the other hand say that the vital function of filling a board vacancy could be accomplished by a vote of only three members. When all of the statutes are read together, we cannot attribute such an intent to the legislature. If that is the desire of the legislature, a simple amendment of K.S.A. 25-2022 may accomplish it.

We hold that K.S.A. 1982 Supp. 72-8205 controls the vote necessary on a motion or resolution to fill vacancies on a school board the same as for the passage of any other motion or resolution. The attempted appointments of Mr. Fisk, Mr. Stoller and Mr. Thielen all fail for lack of a sufficient vote. However, in order that U.S.D. #407 may continue to function, this opinion shall not become final until thirty days after the mandate is issued or until the governor has appointed additional persons to the school board to bring its membership to four as mandated by K.S.A.

25-2022b, whichever event first occurs. In the meantime, our earlier order authorizing Mr. Fisk and Mr. Stoller to participate in the day-to-day business of the school board of U.S.D. #407 shall continue in full force and effect until this opinion becomes final as hereinbefore set forth.

One final comment seems appropriate. When the membership of the board has been restored to four or more members pursuant to K.S.A. 25-2022b, or otherwise, we trust the members will put aside their personal differences and proceed to carry out their statutory duties as they have sworn they will do.

The judgment of the trial court to the effect that a school board may, at a regular meeting, consider matters not contained in a previously published agenda is affirmed and the judgment of the trial court that a vote of less than four members of a school board is sufficient to fill a vacancy on the board is reversed.

SCHROEDER, C.J. dissenting as to Syl. ¶ 5 and the corresponding portions of the opinion.