No. 62,486

STATE OF KANSAS *ex rel.* ROBERT T. STEPHAN, Attorney General, *Appellee,* v. THE BOARD OF COUNTY COMMISSIONERS OF THE COUNTY OF SEDGWICK; TOM SCOTT; BERNARD A. HENTZEN; DAVE BAYOUTH; BILL Q. MCCRAY; and MARK SCHROEDER, *Appellants.*

(770 P.2d 455)

Opinion filed March 3, 1989.

*Michael D. Pepoon,* assistant county counselor, argued the cause, and *Robert R. Arnold,* county counselor, was with him on the brief for appellants.

*Rita L. Noll* and *Steve A. Schwarm,* assistant attorneys general, argued the cause, and *Robert T. Stephan,* attorney general, was with them on the brief for appellee.

*William P. Tretbar,* of Fleeson, Gooing, Coulson & Kitch, of Wichita, was on the brief for *amicus curiae* Wichita Eagle and Beacon Publishing Company, Inc.

The opinion of the court was delivered by

ALLEGRUCCI, J.: This is a declaratory judgment action in which

the attorney general is asking that the Sedgwick County Board of Commissioners' resolution increasing its quorum requirements be declared void. The district court granted the State's petition and declared the resolution void. The Board of County Commissioners of Sedgwick County appeals and we reverse.

On May 27, 1987, the five members of the Board of County Commissioners of Sedgwick County (Board) unanimously adopted a home rule resolution to increase the quorum for future meetings of the board to four rather than three county commissioners. The attorney general, on behalf of the State of Kansas, filed a petition, alleging that the Board's resolution increasing the quorum requirement to four members should be declared void as a violation of K.S.A. 1988 Supp. 77-201 *Fourth*. The Board now appeals from the district court's decision, and the Wichita Eagle and Beacon Publishing Company, Inc., has filed a brief as *amicus curiae* supporting the decision of the district court.

We first must determine whether the resolution is void as a violation of public policy as stated in the Kansas Open Meetings Act. The Board contends that the quorum resolution reflects a valid exercise of powers delegated by the legislature to Sedgwick County through the Home Rule Act. K.S.A. 19-101a(a) grants to counties, subject to specific enumerated exceptions, the authority to "transact all county business and perform all powers of local legislation and administration it deems appropriate." K.S.A. 19-101c provides: "The powers granted counties pursuant to this act shall be referred to as county home rule powers and they shall be liberally construed for the purpose of giving to counties the largest measure of self-government."

In addition to these general grants of authority, the Board argues that the quorum resolution finds specific authorization in K.S.A. 19-218. This statute provides:

"Every board of county commissioners shall have a seal, and may alter the same at pleasure. They shall sit with open doors, and all persons conducting in an orderly manner may attend their meetings; and they may establish rules and regulations to govern the transaction of their business."

The State and *amicus* respond by arguing that the quorum resolution adopted by the Board violates public policy in general, and the policy underlying the Kansas Open Meetings Act, K.S.A. 75-4317 *et seq.* They identify two objections to the quo-

rum resolution: First, that the resolution would frustrate democratic government by allowing two members of the Board to frustrate any action by refusing to attend commission meetings. Second, that the quorum resolution allows the Board to evade the general policy underlying the Kansas Open Meetings Act.

This court rejected an argument similar to the first argument advanced by the State and *amicus* in *U.S.D. No. 407 v. Fisk*, 232 Kan. 820, 660 P.2d 533 (1983). In *Fisk*, at issue was the proper interpretation of K.S.A. 25-2022 and K.S.A. 1982 Supp. 72-8205. The appellants argued that, where three vacancies exist on a seven-member school board, the four remaining board members should not be required to express a unanimous decision in selecting new members to fill the vacancies. One of the arguments advanced by the appellants was similar to that made by the State in the present case: A minority of the board could frustrate the filling of the vacancies by refusing to participate in the selection process. The *Fisk* court rejected the argument, stating:

"However, the same argument could be made of any board that lacked seven members. We do not adopt the argument that one or more of the members of a four-person board will refuse to perform the duties [of] the office and refuse to cooperate in bringing the board to full membership." 232 Kan. at 828.

See *In re Application for Incorporation as City*, 241 Kan. 396, 398, 736 P.2d 875 (1987). Moreover, should two members of the county commission in the present case seek to frustrate any action by the Board by consistently refusing to attend any Board meetings, they could be removed from office pursuant to K.S.A. 19-2609. This statute provides for removal by civil action county commissioners and other officers who "shall neglect or refuse to perform any act which it is his duty to perform, or shall corruptly or oppressively perform any such duty."

Similarly, the provisions of the Kansas Open Meetings Act do not provide an independent limitation upon the ability of a county commission to increase the quorum requirements for commission meetings. The general policy underlying the Kansas Open Meetings Act is stated in K.S.A. 75-4317(a):

"In recognition of the fact that a representative government is dependent upon an informed electorate, it is declared to be the policy of this state that meetings for the conduct of governmental affairs and the transaction of governmental business be open to the public."

The Open Meetings Act seeks to increase public confidence in

government by increasing the access of the public to the decision-making processes of government. This increases the accountability of governmental bodies, and deters official misconduct. See Tacha, *The Kansas Open Meeting Act: Sunshine on the Sunflower State?*, 25 Kan. L. Rev. 169, 170-71 (1977).

K.S.A. 75-4317a defines the governmental decision-making event which is subject to the provisions of the open meetings law:

"As used in this act, 'meeting' means any prearranged gathering or assembly by a majority of a quorum of the membership of a body or agency subject to this act for the purpose of discussing the business or affairs of the body or agency."

See *State ex rel. Murray v. Palmgren*, 231 Kan. 524, 534, 646 P.2d 1091 (1982).

The State suggests that the quorum resolution at issue in the present case violates the Open Meetings Act by permitting two members of the county commission to meet outside the scope of the Act. Those two members could, in turn, individually speak with other members of the Board, thereby circumventing the provisions of the Open Meetings Act. The legislature, however, could have prevented this result by simply providing that the Open Meetings Act applies whenever two members of a governmental body or agency gather or assemble. Instead, it refused to adopt such an approach and defined a meeting simply as "a majority of a quorum," but did not define what constitutes a quorum.

One authority has agreed, finding that the legislature's refusal to designate a more explicit definition of the term "meeting" indicates that the Open Meetings Act is not an independent limitation upon the ability of a local governmental body or agency to change the definition of a quorum.

"In addition, proof of the majority of a quorum element necessarily requires evidence of the legal composition of the governmental body as well as the number of members necessary to constitute a quorum. The number of members of a body necessary for a quorum varies depending on the size of the body and the rules by which it operates. In the absence of a statutorily designated quorum number it has been assumed a majority is a quorum. This may not, however, be the case if regulations or local ordinances provide for the attendance of a greater or lesser number of members to transact business. Since the legislature did not require 'a majority of a majority' it must be presumed local variations are permitted." Smoot and Clothier, *Open Meetings Profile: The Prosecutor's View*, 20 Washburn L.J. 241, 259-60 (1981).

We find that the Open Meetings Act contains no limitation

upon the ability of a county commission to increase its quorum requirements. We conclude that the resolution increasing the quorum requirements does not violate the public policy of the Open Meetings Act.

The State next contends that the resolution of the Board violates the general common-law rule that a majority of a collective body constitutes a quorum. The State also notes decisions from other jurisdictions, which hold that a local governing body is required to follow the common-law quorum rule absent a contrary statutory authorization. *Endeavor-Oxford Union F.H.S. Dist. v. Walters*, 270 Wis. 561, 72 N.W.2d 535 (1955); *Heiskell v. Mayor, &c., of Baltimore*, 65 Md. 125, 4 A. 116 (1886). However, these cases are not beneficial in resolving the issue before us, since they fail to discuss the impact of home rule legislation upon the general common law. For that reason, both cases are distinguishable from the case before us. In *Endeavor-Oxford*, the Wisconsin court held that a municipal council did not possess an "implied power" to alter the general common-law definition of a quorum. 270 Wis. at 571. It did not discuss whether such authority might be derived from home rule legislation which, in Kansas, empowers counties to "transact all county business and perform all powers of local legislation and administration it deems appropriate," subject only to specific enumerated exceptions. K.S.A. 19-101a(a).

The Maryland Court of Appeals' decision in *Heiskell* was decided in the context of a legislative framework which severely limited the extent of powers delegated by the state legislature. Under the then-existing Maryland law,

" 'a municipal corporation possesses and can exercise the following powers, and *no others*: first, those granted in *express words*; second, those necessarily or fairly implied in, or incident to, the powers expressly granted; third, those essential to the declared objects and purposes of the corporation—not simply *convenient*, but indispensable. Any fair, reasonable doubt concerning the existence of power, is resolved by the Courts against the corporation, and the power is denied.' " *Heiskell*, 65 Md. at 148 (quoting 1 Dillon's Commentaries on the Law of Municipal Corporations § 89 [4th ed. 1890]).

Contemporary Kansas law, however, not only contains a much broader grant of authority to counties to perform powers of administration as they deem appropriate, it also requires the liberal construction of those powers. Under K.S.A. 19-101c, the home rule powers delegated to the individual counties must be

liberally construed "for the purpose of giving to counties the largest measure of self-government." This broad delegation of power, combined with the mandatory liberal construction of such powers, requires the rejection of the State's argument that the Board's resolution violated the common law. Common-law rules as to a quorum requirement "may, of course, be altered by statute." *Equity Investors, Inc. v. Ammest Group, Inc.,* 1 Kan. App. 2d 276, 281, 563 P.2d 531, *rev. denied* 225 Kan. 843 (1977). Any limitation upon the ability of a county to alter the general definition of a quorum must be found within the specific exceptions to home rule powers enumerated in K.S.A. 19-101a(a).

The State and *amicus* assert two possible statutory limitations upon a county's home rule power to alter its quorum requirements: K.S.A. 1988 Supp. 77-201 *Fourth* and K.S.A. 19-206. In particular, the State relies upon K.S.A. 1988 Supp. 77-201 *Fourth,* which provides:

"Words giving a joint authority to three or more public officers or other persons shall be construed as [giving] that authority to a majority of them, unless it is otherwise expressed in the act giving the authority."

We find no Kansas case that has ever interpreted this statute as containing a definition of the quorum required for a legal meeting. Rather, the statute has been consistently interpreted as a voting requirement, the cases holding that a majority vote is sufficient to bind a collective body, and that a unanimous vote is not required. See, *e.g., Wycoff v. Board of County Commissioners,* 191 Kan. 658, 673, 383 P.2d 520 (1963); *State v. Boicourt Hunting Ass'n,* 183 Kan. 187, 326 P.2d 277 (1958); *Chambers v. Herrick,* 172 Kan. 510, 514, 241 P.2d 748 (1952); *State, ex rel., v. Woodruff,* 164 Kan. 339, 189 P.2d 899 (1948); *Tucker v. Raney,* 145 Kan. 256, 257, 65 P.2d 329 (1937); *Union Public Ser. Co. v. Corporation Comm.,* 140 Kan. 722, 725, 37 P.2d 1010 (1934); *Parrick v. School District,* 100 Kan. 569, 573, 164 Pac. 1172 (1917); *Water Co. v. City of Wichita,* 98 Kan. 256, 258, 158 Pac. 49 (1916). The nature of K.S.A. 1988 Supp. 77-201 *Fourth* is revealed in particular in *State v. Boicourt Hunting Ass'n,* 183 Kan. 187. Citing G.S. 1949, 77-201, this court held that a resolution of the Forestry, Fish and Game Commission did not have to pass by a unanimous vote. 183 Kan. at 189-90. Moreover, the court also noted in its opinion the existence of an explicit statutory quorum requirement for meetings of the Forestry, Fish

and Game Commission. G.S. 1949, 74-3301. In *Boicourt,* the application of K.S.A. 77-201 *Fourth* to a case where a separate statute explicitly provided for a quorum requirement confirms the conclusion that K.S.A. 77-201 *Fourth* does not contain an independent minimum limit on the size of a quorum.

*P. & F. R. Rly. Co. v. Comm'rs of Anderson Co.,* 16 Kan. 302, 310 (1876), leads to a similar conclusion. The issue was whether sufficient notice had been given for a special session of a board of county commissioners and, therefore, whether the meeting was a valid legal session. This court also discussed the predecessor of K.S.A. 1988 Supp. 77-201 *Fourth,* but as an issue separate from the question of whether a sufficient number of commissioners had been contacted for a legal meeting of the board. Of the predecessor of K.S.A. 1988 Supp. 77-201 *Fourth,* the court stated: "We do not see that this affects the question. Whenever there is a legal session, unquestionably a majority of the commissioners can act and bind the county. But this casts no light upon the question as to the manner of convening a legal session." 16 Kan. at 310. Thus, in *P. & F. R. Rly.,* the court distinguishes between the requirements for a legal session of a collective body (*e.g.,* notice, quorum considerations) and the voting standards (set forth in K.S.A. 1988 Supp. 77-201 *Fourth*) once a legal session is found to exist.

The State argues that to require the presence of more than a majority denies to the majority the authority conferred to it by K.S.A. 1988 Supp. 77-201 *Fourth.* The State and *amicus* contend that this would violate K.S.A. 1988 Supp. 77-201 *Fourth* because if two commissioners were absent, the three commissioners present, although constituting a majority, could not act. Thus, the *amicus* argues, the legislature did not intend the majority to be hamstrung by a minority by way of the home rule resolution. We are not at liberty to interpret the statutes to achieve a desired or popular result. We are bound by fundamental rules of statutory construction, the most basic being that the interpretation of a statute is a question of law, and the intent of the legislature governs where the intent can be ascertained from the statute itself.

We acknowledge that the results could be as appellee and *amicus* contend. However, the question is not one of authority to act but authority to call a meeting, *i.e.,* a quorum. The legislature

chose not to define "quorum" in the Open Meetings Act or in any legislative act that uniformly applies to all counties. That the legislature must do, and not this court.

The State and *amicus* rely on *Lville. & Jeff. Co. Plng. & Zng. Comm. v. Ogden*, 307 Ky. 362, 210 S.W.2d 771 (1948). We find their reliance is misplaced and that the case is distinguishable from the present case. The Kentucky Supreme Court did invalidate a zoning commission's change in its quorum requirements as a violation of Kentucky's version of K.S.A. 1988 Supp. 77-201 *Fourth*. However, the case involved a reduction in the quorum requirements which would potentially allow a minority of the zoning commission to approve an ordinance. The decision by the Kentucky Supreme Court would have been the same whether the statute was interpreted as a quorum requirement or as a voting requirement. In contrast to the present case, the increase in the quorum over a simple majority does not conflict with the interpretation of K.S.A. 1988 Supp. 77-201 *Fourth* as a voting requirement, since it guarantees that a majority will always have to vote in favor of any ordinance passed by the Board.

Our conclusion is supported by a straightforward construction of K.S.A. 1988 Supp. 77-201 *Fourth*. The statute simply provides that, where a joint authority is given to three or more persons, a majority vote of those persons is a binding statement of that joint authority. The statute does not establish, explicitly or implicitly, the legal requirements for a legal session of that joint authority, such as notice or quorum requirements.

The second possible statutory limitation asserted by the State and *amicus* is contained in K.S.A. 19-206. That statute provides:

"In all counties having more than eight thousand (8,000) inhabitants, the board of county commissioners shall and in all other counties may meet in regular session, at the county seat of the county, on the first Monday in each month during the year, and in special session on the call of the chairman for the transaction of any business general or special, at the request of a majority of the members on the board, as often as the interest and business of the county may demand. The nature of the business to be transacted at any call meeting to be governed by the matters and things set out in the call."

The State contends that K.S.A. 19-206 implicitly limits the ability of a board of county commissioners to increase its quorum requirement. The State argues that it would be inconsistent for a majority of a board to be able to call a special session under K.S.A. 19-206, yet not constitute a quorum.

The Board does not respond by arguing that there is no inconsistency, but contends that K.S.A. 19-206 is a non-uniform statute inapplicable in the present case. We agree. Under K.S.A. 19-101a(a)(1), the home rule powers of counties are "subject to all acts of the legislature which apply uniformly to all counties." K.S.A. 19-101a(b) provides, in part:

"If the legislation proposed by the board under authority of subsection (a) is contrary to an act of the legislature which is applicable to the particular county but not uniformly applicable to all counties, such legislation shall become effective by passage of a charter resolution in the manner provided in K.S.A. 19-101b."

K.S.A. 19-206 requires counties having more than 8,000 inhabitants to hold regular monthly sessions, and to call special meetings at the request of a majority of the members of the board of county commissioners. It is non-uniform in nature since it is limited in its application by the population of the individual county.

K.S.A. 19-206 is not a uniform statute, applicable to all counties, and therefore does not limit the authority of the board of county commissioners to increase the definition of a quorum beyond a majority of its members. We find the resolution raising the quorum of the five-member county commission from three to four members was a valid exercise of the commission's home rule authority.

The judgment of the district court is reversed.