The Honorable Bill Graves Governor of the State of Kansas State Capitol, 2nd Floor Topeka, Kansas 66612-1590
Dear Governor Graves:
In Attorney General Opinion No. 98-26 this office concluded that a series of meetings or communications which may individually involve less than a majority of a quorum of a public body, but which collectively total a majority of a quorum, through which a common topic of the business or affairs of that body is discussed, constitutes a "meeting" for purposes of the Kansas Open Meetings Act (KOMA), K.S.A. 75-4317 etseq. In reference to that opinion and on behalf of the League of Kansas Municipalities and several city governing bodies, you ask a number of questions, with which we will deal individually.
 I. What is the effect of Kansas Supreme Court decision, State ex rel. Stephan v. Board of Sedgwick County Commissioners, 244 Kan. 536 (1989), on Attorney General Opinion No. 98-26?
We reviewed this case during the course of researching Attorney General Opinion No. 98-26 and concluded that it was not relevant, and certainly not conclusive to the issue of whether serial meetings or e-mail are covered by the current provisions of the KOMA.
The sole question in State ex rel. Stephan v. Board of Sedgwick CountyCom'rs.[1] was whether the KOMA prohibited county commissions from raising their quorum requirements through the exercise of home rule power.[2] While the Court did engage in a discussion of the potential for violation of the KOMA by serial meetings,[3] this was not an issue in the case; it was not even briefed. The factual situation underpinning the decision did not involve any type of serial communication or meeting. Thus, the Court's comments were dicta.
Even assuming the comments were not dicta and the Court actually held that the KOMA did not apply to serial meetings, the Court was considering the old definition of a meeting. Attorney General Opinion No. 98-26
interprets K.S.A. 75-4317a, which defines a "meeting" under the KOMA as follows:
 "As used in this act, `meeting' means any gathering, assembly, telephone call or any other means of interactive communication by a majority of a quorum of the membership of a body or agency subject to this act for the purpose of discussing the business or affairs of the body or agency." K.S.A. 75-4317a.
Prior to 1994, and at the time Sedgwick County was decided, the KOMA defined a meeting as:
 "[A]ny prearranged gathering or assembly by a majority of a quorum of the membership of a body or agency subject to this act for the purpose of discussing the business or affairs of the body or agency." K.S.A. 75-4317a (Ensley 1984).
The change in statutory language was in response to State ex rel. Stephanv. Board of County Com'rs of Seward County,[4] in which the Kansas Supreme Court held that a telephone call was not a meeting under the old definition because physical presence was required for a meeting and because the call was not prearranged.[5]
Thus, because the relevant language in the case is dicta and because the statutory definition has changed significantly since the case was decided, the Sedgwick County case is of no relevance to whether a serial communication or meeting, or e-mail, is an "interactive communication" under the current definition of meeting.
In a related argument, the League of Kansas Municipalities urges that the legislative history behind the new definition of K.S.A. 75-4317a is contrary to our conclusion that an "interactive communication" may take the form of a serial meeting.
We reviewed this legislative history prior to drafting Attorney General Opinion No. 98-26 and concluded it was consistent with our conclusion. 1994 House Bill No. 2784 originally proposed redefining a meeting as "any prearranged gathering, assembly, telephone call, written communication or any other means of communication. . . ." This draft of the bill included a statement of what evidence could show prearrangement. The Minutes of the Senate Committee on Local Government for February 15, 1994 state that at the Committee Chairman's suggestion, "prearranged" was deleted from the bill, along with the provision dealing with evidence of prearrangement.
The minutes then provide:
 "Mr. Heim recalled the testimony of Don Moler of the League of Kansas Municipalities with regard to Mr. Moler's thought that the committee should carefully consider the intent of including `written communication.' The question arose as to if the Legislature would want to define `meeting' as letters or memos. Sen. Gooch raised a question regarding the Mayor of a city sending a message to a city council member through the personal computer of the counsel member. He asked if this would be considered as a violation. Sen. Tillotson commented that perhaps if the press were sent the same message, it would not be a violation. After further discussion, the chairman suggested striking `written communication' and inserting `any other means of interactive communication'. . . ."
We do not see this as an exclusion of serial communications from the definition of meeting. Rather, it appears that the Legislature was focused on the need for the "meeting" to be interactive (so that a unilateral letter or computer message is not itself a "meeting"). There is nothing in the legislative history or in the language of the statute to indicate that the Legislature intended to require a communication to be contemporaneous to be interactive.
Attorney General Opinion No. 98-26, in interpreting what constitutes an "interactive communication," merely stands for the proposition that the members may not do indirectly — through an agent, through e-mail, through serial meetings — what they are prohibited from doing directly. Once an indirect interactive communication becomes a KOMA "meeting," then the interactive communication is subject to the KOMA requirements. For instance, if e-mail between members becomes extensive enough that it amounts to a discussion between a majority of a quorum of the business or affairs of the body, the KOMA's procedural safeguards are triggered.
For example, suppose members of a six member city council have all been connected to an e-mail system. On the next meeting's agenda there is an issue to reconsider widening the city's main street. Member A wants to see it pass. Member A e-mails member B and asks B's thoughts on the issue, and what it would take to get B to vote for the issue. B replies that he could support the issue, but he also wants another street widened at the same time. A forwards these items of e-mail to member C, asking C for C's opinions. C agrees to support widening the main street, but not the other street B suggested. Member A then e-mails C's response to B, and to all the other members, and the process goes on, until A has enough votes to pass the issue. All members are aware that their comments are being shared with the others, and that the other members' comments are being shared with them.
The members have, by any standard, discussed the issue. All that remains is for them to walk into the next meeting and vote. The public will never know why the members voted they way they did, and the purpose of the KOMA is defeated. We believe this violates both the spirit and letter of the KOMA since the public was excluded.
Indirect communications which amount to a meeting, however, are not necessarily prohibited. The question becomes whether KOMA's procedural safeguards — notice and public access — are complied with. It is technologically feasible and practical for a LISTSERV or bulletin board to be established on the Internet to which members of the public body have access to post and read messages and the public has access to at least read the messages. A terminal or cumulative print-out of messages could be made available in a public place for individuals who do not have access to a computer. When persons request notice of meetings, the first notice they should receive is that there is a perpetual, virtual meeting going on and how to access it. (We note that for specific types of municipalities there may be other statutory obstacles to virtual meetings.)
If, however, the indirect communication is such that KOMA's procedural safeguards cannot be met, the communications are prohibited. The KOMA does present some obstacles to discussions, but the KOMA represents the Legislature's determination that discussion of public business by public bodies must be done in public.
 2. Is the Open Meetings Act violated when a third party (such as a reporter or constituent), who is not acting at the direction of or at the request of a board member, communicates with a majority of the quorum of board members in a series of communications with individuals?
The KOMA applies to covered communications, "for the purpose of discussing the business or affairs of the body." K.S.A. 75-4317a. The KOMA applies to members of the body, and their actions and intentions. If the serial communication is by a constituent or reporter who is not acting at the behest of a member, it would be unlikely that the members
are communicating with this reporter "for the purpose of discussing the business or affairs of the body with other members." It is only when members use a third party "for the purpose" of such discussions between the members, that the KOMA is implicated. Normally this would occur through an employee of the public body who is expressly directed to pass communications back and forth between the members to avoid public discussion, although an ongoing pattern of such communications through such a person could be evidence that the members were using this person as a means of communicating with each other.
 3. Is it appropriate for the presiding officer or staff member to contact other members of the board to determine which items to include on the agenda of the next meeting or to add items to an existing agenda for the meeting?
As noted, the KOMA applies to discussions by a majority of a quorum of the business and affairs of the body.[6] We do not believe that purely procedural issues are the type of topic contemplated by KOMA. One member informing the chair that she will be late for the next meeting and asking that an important item be shifted to later in the meeting, is not itself the substantive business or affairs of the body. The chair may inform the other members that it is necessary to adjust the agenda to accommodate a particular member's schedule, or one member may suggest that the next meeting can be moved to a larger room. These are not substantive issues, discussion of which is covered by the KOMA. Likewise, the mere request to add an item to the next agenda is not itself the type of communication that we believe the KOMA to encompass. If an agenda is created, there must be a mechanism for placing items on it, and the agenda must be communicated to other members.
We note, however, that such conversations could lead to what amounts to discussion of substantive issues. For instance, member A thinks that the city commission should have a fountain in the city park refurbished, but does not want to add it to the agenda without assurance it will pass. Member A asks the city administrator to contact members B and C for their opinions and to relay those opinions back to A before adding it to the agenda. The administrator reports back that B will support it, but that C will support it only if A and B agree to also support refurbishing the gazebo in the park. A has the administrator contact B and B agrees to support refurbishing the gazebo. A then asks that the agenda for the next meeting include refurbishing the gazebo and fountain. This type of discussion, while ostensibly about the agenda, amounts to a discussion of the merits of substantive issues and if three members constitutes a majority of a quorum of the city commission, a meeting has occurred.
 4. Can a staff member brief all board members on an issue, elicit comments and discuss the board member's concerns about said issue, if the staff member does not discuss the board member's concerns and comments with other board members?
Webster's Third New International Dictionary Unabridged 1176 (Merriam-Webster, Inc. 1986) defines "discuss" as:
 "[T]o investigate (as a question) by reasoning or argument: argue by presenting the various sides of. . . .
 "Syn ARGUE, DEBATE, DISPUTE, AGITATE: these verbs all mean to discourse about something in order to arrive at the truth or convince others. DISCUSS implies a reasoned conversational examining, esp. by discussing pros and cons, in an attempt to clarify or settle. . . ."
As previously noted, the KOMA by its express terms only applies to discussions among the members. A discussion between a board member and a staff member is not, in and of itself, covered by the KOMA. It is only when a majority of a quorum of a public body collectively and interactively weigh the pros and cons of a substantive issue among themselves by going through a staff member that we believe the KOMA is implicated. We believe that a staff member can individually brief all board members on an issue, elicit comments, and discuss each board member's concerns about the issue, if the staff member does not discuss any board member's concerns and comments with other board members so that a majority of a quorum are made aware of and can respond to each other's concerns outside of the parameters of an open public meeting.
The only caveat we would add is that this procedure should never be used to take binding action. The KOMA provides: "no binding action by such bodies shall be by secret ballot,"[7] and "[n]o binding action shall be taken during a closed or executive recess. . . ."[8] Taking binding action outside of an open meeting is prohibited.
In the recent opinion City of Topeka v. Watertower Place Dev. Group,
the city commission had reached the consensus in an otherwise proper executive session that the city attorney should notify a developer that the developer's contract with the city was terminated.[9] The Court held this to be a violation of the KOMA, apparently as taking improper binding action in executive session. We believe this case stands for the proposition that decisions which require a vote must be made in the open portion of public meetings. Polling of members outside of an open meeting should not be done to reach a decision which requires binding action of the body.
In conclusion, we believe Attorney General Opinion No. 98-26 is a correct interpretation of the KOMA. In that opinion we cited essentially all available cases from other states, all of which concluded that serial meetings or indirect communications could be meetings for purposes of the relevant, state's open meetings act. We have also searched for Attorney Generals' opinions from other states, which all concluded likewise.
We note that whether a series of communications constitutes a violation of the KOMA is very fact specific, and each situation must be decided on its facts. We stand by and reaffirm our belief in the conclusions reached in Attorney General Opinion No. 98-26.
Very truly yours,
 CARLA J. STOVALL Attorney General of Kansas
 Steve Phillips Assistant Attorney General
CJS:JLM:SP:jm
[1] 244 Kan. 536 (1989).
[2] Id. at 537.
[3] Id. at 539.
[4] 254 Kan. 446 (1994).
[5] Id. at 451.
[6] K.S.A. 75-4317a.
[7] K.S.A. 75-4318(a).
[8] K.S.A. 75-4319(c).
[9] 265 Kan. 148, 156-57.