105   621
116   508
105   621
119     3
105   621
d142  590

[No. 16005.   In Bank—January 16, 1895.]

# THE PEOPLE EX REL. HENRY N. HOFFMAN, APPELLANTS, *v.* M. H. HECHT ET AL., BOARD OF FREEHOLDERS, RESPONDENTS.

CONSTITUTIONAL LAW—CITY CHARTER—BOARD OF FREEHOLDERS—ELIGIBILITY.—Under section 8 of article XI of the constitution the board of fifteen freeholders authorized to frame a city charter must be composed of those who have been for at least five years qualified electors of the city, and persons chosen upon the board of freeholders for the city and county of San Francisco, who have not been for at least five years qualified electors thereof, are ineligible to the office of freeholders.

ID.—EFFECT OF QUALIFICATION OF FREEHOLDERS.—Where a board of fifteen freeholders was elected to frame a charter for the city and county of San Francisco, two of whom were ineligible to the office, the remaining thirteen members regularly elected constitute a legal board of freeholders with authority to act in the framing of a charter.

ID.—QUALIFICATION OF FREEHOLDERS—ORGANIZATION OF BOARD—VACANCIES.—The persons elected as freeholders must qualify as individuals, and the board of freeholders has no legal existence until it is organized by the individuals whose election has been proven, and the board is created by the organization of the members elected; and, when fifteen members have been elected by a plurality of all the votes cast, the constitution is so far complied with that it only remains for the persons selected, or a majority of them, to organize and exercise the power of the board of freeholders, and any vacancy caused by ineligibility or death, or unwillingness to act, of a single member does not invalidate the election, or invalidate the organization of the board.

ID.—CODE PROVISION—CHANGE OF RULE—RIGHTS OF MAJORITY.—Under section 15 of the Political Code words giving a joint authority to three or more public officers or other persons are construed as giving such authority to a majority of them, unless it is otherwise expressed in the act giving the authority; and this provision changes the former rule that the existence of a full board is necessary in order to a decision by the majority.   Under the code the majority, for all practical purposes, becomes the full board, and is the receptacle of all the authority conferred upon the whole, and its action cannot be stayed. by the non-action, failure to qualify, absence, death, or want of eligibility of the minority.

ID.—DE FACTO OFFICERS.—The office of a freeholder is a *de jure* office created by the constitution, and where disqualified persons have been elected by a plurality of the qualified electors, received their certificates of election, and qualified and participated in the action of the board, they are acting under color of office, and their acts, while remaining as *de facto* officers in discharge of the duties of the office, are as valid and binding as those of *de jure* officers, until their right to the office has been judicially determined.

ID.—EFFECT OF DISQUALIFICATION OF FREEHOLDERS.—It seems that the disqualification of persons elected as freeholders does not entitle those who received the next highest number of votes to demand and receive certificates of election.

APPEAL from a judgment of the Superior Court of the City and County of San Francisco.

The facts are stated in the opinion.

*Robert Ash*, for Appellants.

*City and County Attorney Harry T. Creswell, Henry N. Clement*, and *William F. Gibson*, for Respondents.

SEARLS, C.—This is a proceeding by *quo warranto*, brought in the superior court to determine by what authority the defendants, as individuals or as a board, are acting as a board of fifteen freeholders to prepare and propose a charter for the city and county of San Francisco.

Two several demurrers were interposed to the complaint: one by and on behalf of William B. Bourn and I. W. Hellman, two of the defendants, and the other by all the defendants.

The demurrers, and each of them, were sustained by the court, and the relator declining to amend, final judgment went for the defendants, from which judgment the plaintiffs appeal.

The complaint, which, for the purposes of this case, is to be taken as true, avers in substance as follows:

1. The city and county of San Francisco is, and at all the times herein mentioned has been, a municipal corporation duly organized and existing under and by virtue of an act of the legislature of the state of California, approved April 19, 1856, and the several acts of said legislature amendatory thereof and supplementary thereto, and contains a population of three hundred thousand inhabitants.

2. On the eleventh day of September, 1894, the properly constituted authorities of said city and county of San Francisco, by due proceedings, ordered that a board

of fifteen freeholders, who shall have been at least five years qualified electors thereof, should be elected by the qualified voters of said city and county, at the general election on the sixth day of November, 1894, whose duty it should be to prepare and propose, within ninety days after such election, a charter for such city and county under and by virtue of section 8 of article XI of the constitution of the state of California.

3. Thereafter, and in due time, forty-three persons were regularly nominated as candidates for the said officers of board of freeholders, certificates of such nominations duly filed as required by law, all of whom were believed to possess the qualifications required by law to fill said offices.

4. The names of the persons so nominated were placed upon the ballots as candidates for said office.

5. On the twenty-fifth day of October, 1894, a proclamation was duly made, issued, and published by the proper officers, as required by law, that there would be chosen and elected on the sixth day of November, 1894, a board of fifteen freeholders.

6. At the general election of November 6, 1894, the said persons so nominated were voted for by the qualified voters of said city and county, each receiving the number of votes mentioned in the complaint.

7. The vote was duly canvassed, and the defendants herein declared duly elected to fill said office.

8. Thereafter defendants, and each of them, received certificates of election, duly qualified and organized as a board of fifteen freeholders, and entered upon the discharge of their duties as such board, and are still so acting and preparing a charter.

9. The defendants are not now, and never have been, a legally constituted board of fifteen freeholders, but have usurped the functions of said board without authority or right; that no board was chosen by the voters as required by the election and article of the constitution referred to herein, for the reasons:

a. Defendant I. W. Hellman was ineligible to said

office in that he had not been for at least five years a qualified elector of said city and county; that he had been such qualified elector for but three years, and that prior to said three years he had been a resident and elector of the city of Los Angeles, California.

*b.* The defendant W. B. Bourn was ineligible because he had not been for five years a qualified elector of the city and county of San Francisco, as required by the constitution; that he had been an elector but two years, and that prior thereto he was a resident and elector of the county of Napa, California.

*c.* The remaining defendants and members of the board are but thirteen in number, and do not constitute a board of fifteen freeholders.

*d.* The above-named thirteen defendants are all eligible and qualified to hold the office as members of the board aforesaid, and have accepted the certificates and acknowledged the right of said defendants Bourn and Hellman as members of said board, and are sitting with said Bourn and Hellman as members of said board, and claim that said persons are and constitute a board of fifteen freeholders.

The general demurrer of all the defendants is upon the ground "that said complaint does not state facts sufficient to constitute a cause of action."

The separate demurrer of Hellman and Bourn is upon the ground that the "said complaint does not state facts sufficient to constitute a cause of action against these defendants, or either of them."

Section 8 of article XI of the constitution of the state of California, as amended, and the ratification thereof declared September 30, 1892, is in part as follows: "Any city containing a population of more than three thousand five hundred inhabitants may frame a charter for its own government, consistent with and subject to the constitution and laws of this state, by causing a board of fifteen freeholders, who shall have been for at least five years qualified electors thereof, to be elected by the qualified voters of said city at any general or special

election, whose duty it shall be, within ninety days after such election, to prepare and propose a charter for such city, which shall be signed in duplicate by the members of such board, or a majority of them," etc.

The first question for consideration relates to the eligibility of the defendants I. W. Hellman and William B. Bourn as freeholders under the constitutional provision.

They had not been for at least five years qualified voters of the city and county in which the election was held, and for which the charter was to be prepared.

The language used by the framers of the constitution in relation to the qualification essential to eligibility to the office or position of a freeholder is plain and unequivocal, and the authority to prescribe the qualification is not open to doubt.

The reason of the rule is apparent, and need not be stated.

The defendants Hellman and Bourn, not having been for at least five years qualified electors of the city and county of San Francisco, were ineligible to the office of freeholder, and their separate demurrer should have been overruled.

2. Do the remaining thirteen members, who were regularly elected, constitute a legal board, with authority to act?

The contention of appellant is, that, in order to constitute a valid board, it is essential that fifteen qualified members be elected, and, that without such number thus qualified, there can be no constitutional board, and hence that the thirteen members should be inhibited from acting either with or without the two who are disqualified.

We think this position is unwarranted under the language of the constitution, and not in consonance with public policy or the analogies in similar cases.

It is true the constitution provides for the election of a *board of fifteen freeholders,* but the persons who are, when elected and qualified, to constitute such board, are

CV. CAL.—40

elected and must qualify as individuals, and the entity known as the *board* has no legal existence until it is organized by the individuals who come clothed with the insignia of authority afforded by a certificate or other adequate proof of an election.

The electors select the persons who are to constitute the board, but do not create the board. That is done by the organization of the members.

When the electors have elected, by a plurality of all the votes cast, fifteen members to constitute the board, and furnished them with the evidence of said action, their power in the premises is exhausted, and the requirement of the constitution is so far complied with that it only remains for the persons so selected, or a majority of them, to organize and exercise the power which, by virtue of their election, is vested in them.

An interpretation which holds that the ineligibility, or death, or unwillingness to act of a single member thus selected invalidates the entire election, would work great hardship, and tend to thwart the will of the electors in many instances, and should not be indulged unless rendered imperative by the mandate of the constitution.

The same constitution (article XI, section 5) provides that the legislature, by general and uniform laws, shall provide for the election or appointment in the several counties of "boards of supervisors," etc.

Other portions of the constitution provide for a supreme court, "which shall consist of a chief justice and six associate justices."

Again, "the senate shall consist of forty members, and the assembly of eighty members."

It would, we think, hardly be contended that because the constitution provides for a *board of supervisors* that an election for supervisors, in which a single member elected was disqualified, would either invalidate the election of other members, or prevent their organizing and acting as a *board*.

Like considerations apply to the election of members

of the senate and assembly, and to the election, organization, and action of the supreme court.

The code provides that " words giving a joint authority to three or more public officers or other persons are construed as giving such authority to a majority of them, unless it is otherwise expressed in the act giving the authority." (Pol. Code, sec. 15.)

The earlier doctrine was that where a board of commissioners was created by the legislature, and discretionary powers conferred upon them to decide upon matters of public interest, and the law had made no provision that a majority should constitute a quorum, all must be present and consult, though a majority might decide. (*People* v. *Coghill*, 47 Cal. 363, and cases cited.)

The rule prior to its modification by the code may be stated thus:

The power or authority given to public officers, commissioners, or committeemen, was a joint authority to be exercised by all of them, and (except as provided by statute) all must meet and deliberate; but this done, a majority could decide.

To the exercise of this joint authority it was sometimes held, and it would seem logically, that the existence of a full board was necessary.

If the authority was in contemplation of law to be exercised by *all the members*, then there should be members capable and competent to its exercise; but under our codes this authority, although joint where given to three or more, is to be " construed as giving such authority to a majority of them" unless it is otherwise expressed in the act giving the authority. If a majority possesses all the authority of the whole, then such majority must be competent to its exercise.

For all practical purposes the majority becomes the full board. It is the receptacle—the reservoir—of all the authority conferred upon the whole, and its action, it is submitted, cannot be stayed by the nonaction, failure to qualify, absence, death, or want of eligibility of the minority.

These were the very obstacles intended to be sur-
mounted by the statute.

Since the enactment of the code it was held in *People*
v. *Harrington*, 63 Cal. 257, that the action of a quorum
was the action of the board of supervisors, and that the
action of a majority of such quorum, though not con-
stituting a majority of the board, was valid and bind-
ing.

In *State* v. *Huggins*, Harp. (S. C.) 139, the facts were
that, of eighteen managers of elections appointed by the
legislature, two had refused to qualify, one was dead,
and one disqualified to serve, and the court held that a
majority, viz., eight of the remaining fourteen, properly
formed a board to determine on the validity of a con-
tested election; a majority of the managers *qualified to*
serve being all that is required by the legislature.

Colcock, J., in the course of his opinion, said: " Now,
if necessity and public convenience may require that,
where all the managers of these elections are alive and
have qualified, a majority may act, does not the same
reason operate to authorize the managers of an election
to act where some of those who have been nominated
are dead or have not qualified"?

Words giving a joint authority to three or more pub-
lic officers will be construed as giving it to the majority
unless otherwise expressed. (*Talcott* v. *Blanding*, 54
Cal. 289.)

If the authority is given to and may be exercised by
the majority, and that the minority, if present and act-
ing, cannot defeat it, it must follow that such minor-
ity cannot, by absence or failure to qualify, defeat the
will of the majority. This doctrine was illustrated in
*City of Oakland* v. *Carpentier*, 13 Cal. 540, where it was
argued that, as the charter provided that a board of five
trustees should be elected, etc., and as only four quali-
fied, their acts were void for want of a legal organiza-
tion. The court disposed of the question by saying:
" We can see no reason for holding that a majority of
the members elected to this board should not as well be

held empowered to act at the first as at any subsequent meeting of it."

There is nothing inherent in the duties to be discharged by the freeholders to invoke a more strict rule of construction against them than would be called for in the case of other boards or bodies invested with public functions.

The provision of the constitution is self-acting. (*People* v. *Hoge*, 55 Cal. 612.) The constitution does not in terms require the joint action of *all* the members of the board of freeholders. It does provide that the charter prepared by them must be " signed in duplicate by the members of such board, or a majority of them."

Under the doctrine which was formerly upheld by many of the courts, that all the members of a board, committee, or commission, must meet and deliberate, though a majority could decide, the contention of appellant in support of the theory that the presence and action of all the members is necessary to an organization may be upheld. The consensus of modern opinion, however, is believed to be that, where a majority may act, such majority may organize and act. This is believed to be the very object of the fifteenth section of the Political Code.

Again, the office of freeholder is created by the constitution. It is a *de jure* office. When Hellman and Bourn were elected by a plurality of the qualified electors, received their certificates of election, and qualified and participated in the action of the board, they were there under color of office and presumptively entitled to the office. They were *de facto* officers in the discharge of the duties of a *de jure* office, and as such their acts while they remained such were as valid and binding as those of *de jure* officers. There must be a *de jure* office to be filled before there can be a *de facto* officer.

If the former exists, and the latter holds it under and pursuant to a regular commission purporting to empower him to act, his acts in such office, until his right thereto is judicially determined, the law holds upon

principles of policy and justice to be valid so far as they involve the public and third parties, notwithstanding the personal liability of the incumbent for intruding into such office. A leading case upon the subject of officers *de facto* is that of *State* v. *Carroll*, 38 Conn. 449, 9 Am. Rep. 409, in which Butler, C. J., after an exhaustive discussion of the doctrine, and a review of the English and American cases, uses the following language: "A definition sufficiently accurate and comprehensive to cover the whole ground must, I think, be substantially as follows: An officer *de facto* is one whose acts, though not those of a lawful officer, the law, upon principles of policy and justice, will hold valid so far as they involve the interests of the public and third persons where the duties of the office were exercised: 1. . . . . 2. . . . . 3. Under color of a known election or appointment, void because the officer was not eligible, . . . . such ineligibility . . . . being unknown to the public."

We reach the following conclusion: 1. The thirteen *freeholders*, constituting as they do, a majority of all the members of the board, were competent to organize and act as a board of *freeholders* under the constitution and law, and may lawfully prepare and propose a charter for the city and county of San Francisco; 2. I. W. Hellman and William B. Bourn were not eligible to the office of freeholder, and, although regularly elected and commissioned, are not *de jure* officers of the board; 3. Said Hellman and Bourn, having been elected and commissioned, became *de facto* members of the board, and as such their acts were and are valid as to the public and third parties.

We are asked by the counsel in the event of holding that Bourn and Hellman are not entitled to their seats to indicate: 1. Whether or not Patrick Reddy and J. C. Whiting, who received the next highest number of votes, are entitled to demand and receive certificates of election; and, if not, then 2. How shall the vacancies be filled?

The first query seems to be settled in this state. (*Saunders* v. *Haynes,* 13 Cal. 145; *Crawford* v. *Dunbar,* 52 Cal. 36.)

We must, however, decline to pass upon either of the foregoing propositions, for the reason that they are not involved in the issues presented in the case, and any thing which might be said would be mere *obiter dictum,* and of no binding force should the same questions again arise.

The judgment appealed from should be affirmed as to all the defendants except I. W. Hellman and William B. Bourn, and reversed as to said two last-named defendants, with directions to the court below to overrule the separate demurrer of said I. W. Hellman and William B. Bourn, with leave to answer.

HAYNES, C., concurred.

For the reasons given in the foregoing opinion the judgment appealed from is affirmed as to all the defendants except I. W. Hellman and William B. Bourn, and reversed as to said two last-named defendants, with directions to the court below to overrule the separate demurrer of said I. W. Hellman and William B. Bourn, with leave to answer.

McFARLAND, J.,   GAROUTTE, J.,
VAN FLEET, J.,   HENSHAW, J.,
BEATTY, C. J.