STATE ex rel WOODCOCK, Respondent, v. CHITTY et al, Appellants.

(166 N. W. 633.)

(File No. 4182.   Opinion filed March 8, 1918.)

1.   Schools—School Districts, Formation—Congressional Township District—Which Statute Applies—Repeal.

Where, in a school district embracing two congressional townships, two petitions to county commissioners, one from each township, to create a separate school district in each township, were filed with county auditor; no action being taken by the commissioners, but upon hearing before a joint meeting of the board and the county superintendent, an order was made declaring each congressional township a separate school district, held, that said proceedings were intended to be had under Laws 1909, Ch. 242, providing that upon petition of two-thirds of the electors of a congressional township forming part of a school district, to create a separate school district comprised of such township, filed with county auditor, county commissioners together with county superintendent shall declare such township a separate school, and not under Laws 1907, Ch. 135, Sec. 69, as amended by Laws 1915, Ch. 171; since the repealing clause in the 1907 act, repealing all acts inconsistent with the provisions thereof, did not in effect repeal the 1909 law; the title to the latter act embracing said authority to create school districts out of congressional townships "where two-thirds of electors of said congressional township petition therefor;" and said act of 1909 is not one amending any then existing section of the Educational Code, while it is limited to certain specific conditions, and was independent of the 1907 law; nor was said act of 1909 repealed by Laws 1915, Ch. 171, containing a clause repealing acts inconsistent therewith, and whose title is confined to the subject of amendment of Sec. 69 of said 1907 law, which latter section relates to division of school districts in general, and upon a different plan from that provided in the 1909 act; while said proceedings were not within Laws 1901, Ch. 113, providing among other things that townships not organized into civil townships should remain school district corporations, and that petitions for division of school districts should be signed by at least one-

third of the electors therein; such 1901 law having been re-enacted as Ch. 22, Pol. Code 1903.

2.  **Certiorari—Review of Irregularities, Jurisdiction.**
   A writ of certiorari is not the proper remedy for review of errors or irregularities in attempted exercise of jurisdiction or authority conferred upon public officers or boards.

3.  **Public Officers—Joint Official Board—County Commissioners, County Superintendent—Joint, or Separate, Vote?—Legality.**
   The members of board of county commissioners, and county superintendent, constitute a joint board, under Laws 1909, Ch. 242, providing that in a proceeding to create separate school districts comprising more than one congressional township, the board of county commissioners, together with such superintendent, may declare such separation, and a majority thereof may act; construing Civ. Code, Sec. 2474, providing that words giving joint authority to three or more public officers, etc., are construed as giving such authority to a majority of them, unless otherwise expressed in the act.

Appeal from Circuit Court, Custer County.    Hon. Levi McGee, Judge.

Petition by the State of South Dakota on the relation of Bert Woodcock, against John Chitty, A. Montgomery and D. Carrigan, as the Board of County Commissioners of Custer County, South Dakota, Norma Connor as County Superintendent of Schools of said county, and W. E. Fink as County Auditor of said county, for a writ of certiorari directed to said board, said county superintendent, and said county auditor, commanding them to certify certain proceedings, for creation of separate school districts, to the Circuit Court of Custer County, etc.; from a judgment of which court, following an order finding that said commissioners and superintendent had exceeded their authority, and that said proceedings were without legal effect, defendants appeal.    Order and judgment reversed, with directions to dismiss the writ.

*Percy Helm,* State's Attorney, and *Martin & Mason,* for Appellants.

*Eastman & Eastman,* for Respondent.

(2)  To point two of the opinion, Appellants cited: Civil Code, Secs. 754, 760; State Ex. Rel. Express Co. v. State Board 3 S. D. 338.

(3)  To point three of the opinion, Appellants cited: Jacobs v. Board, 100 Cal. 121-123; 34 Pac. 630-633.

SMITH, J.   For years prior to May 31, 1916, Eden Valley school district No. 8 in Custer county embraced two congressional townships.   On April 15, 1916, two petitions were filed with the county auditor.   One petition was signed by more than two-thirds of the qualified electors of one of the congressional townships, petitioning the board of county commissioners to create a separate school district comprising their congressional township.   The other was a similar petition asking the creation of a separate district comprising the other congressional township.   Both petitions were certified by the county superintendent of schools under date of April 4, 1916, to contain a majority of voters of the respective congressional townships.   On May 2, 1916, a number of persons who had signed the last-named petition filed with the auditor a written request that their names be withdrawn from the petition which, if granted, would have left the petition with less than a majority of the qualified electors of that congressional township.   No formal action was taken by the county commissioners upon this request.   The petitions came on for hearing before a joint meeting of the board of county commissioners and county superintendent on May 31, 1916.   On that date an order was made creating and declaring each of said congressional townships a separate school district.   Each of the three county commissioners voted in favor of this action; the county superintendent voted against it.

In June, 1916, the respondents herein obtained from the circuit court of Custer county a writ of certiorari directed to the board of county commissioners, the county superintendent, and the county auditor, commanding them to certify the foregoing proceedings to the circuit court of Custer county, and commanding them to desist from further proceedings in the matter of creating separate school districts.   On March 1, 1917, that court entered its decision finding that the commissioners and superintendent of schools had exceeded their authority, and that the proceedings creating separate congressional district schools be decreed to be without legal force or effect.   Judgment was entered accordingly, and defendant perfected this appeal. It is appellants' contention that the proceedings complained of were authorized by and in compliance with chapter 242, Laws of 1909, which provides that:

"Wherever two-thirds of the qualified electors of any congressional township in this state which is now a part of some school district comprising more than one such congressional township shall petition the board of county commissioners of their county to create a separate school district comprised of their congressional township and have filed such petition with the county auditor, it shall be the duty of said board of county commissioners, together with the superintendent of schools of said county, at the first regular or special meeting of said board of county commissioners, to declare said congressional township a separate school district, and the county superintendent shall appoint the necessary officers * * * who shall hold office until the election. * * *"

It appears to be respondents' contention that these proceedings were had pursuant to section 69, art. 2, of chapter 135, Laws of 1907, as amended by chapter 171, Laws of 1915. This contention is based upon the supposed effect of the repealing clause contained in the latter act, which declares that:

"All acts and parts of acts inconsistent with the provisions of this act are hereby repealed."

The title of the act is as follows:

"An act entitled an act to amend sec. 69 of chap. 135 of the Session Laws of 1907, relating to the division of school districts."

[1] It is entirely clear from the recitals contained in both petitions filed with the county auditor, and from the action of the joint board in creating new districts embracing congressional townships, that the petitions were filed, and proceedings were intended to be had, under chapter 242, Laws of 1909, and not under the provisions of section 69, c. 135, Laws of 1907, as amended by chapter 171, Laws of 1915.

The first question to be determined is whether the act of 1909 is inconsistent with, and therefore repealed by, chapter 171, Laws of 1915. A very brief review of past school legislation will throw some light on this question.

In 1901 (chapter 113, Laws 1901) the Legislature enacted a codification of the school laws of the state, and repealed all acts and parts of acts relating to education passed prior to January 1, 1901, except special acts relating to schools in cities,

towns, and villages, and independent school districts created by special acts. This act provided that existing districts should remain school corporations, and that existing boundary lines were not changed, but that each township not organized into a civil township, should be and remain a school district corporation until changed as provided in the act, and that as to counties thereafter organized, upon the formation of school districts therein, the boundary lines of congressional townships should be made the boundaries of school districts. Then followed provisions for dividing school districts, requiring a petition signed by at least one-third of the qualified electors of the school district and a majority vote of the electors. Upon such vote it was made the duty of the board of commissioners and county superintendent to divide the district as petitioned for. Section 6 of chapter 3 of the act then provided that:

"After the boundary lines of the several school districts in the county are established, such boundaries at any regular meeting may be changed, by the board of county commissioners and the county superintendent of schools upon a petition for such change signed by ten legal voters residing in the district to be affected by the change. * * * If in the judgment of the commissioners and the superintendent such change is for the best interests of the patrons of the schools."

The Educational Code of 1901, with certain changes not material here, was re-enacted as chapter 22 of the Political Code of 1903. In 1907 the Legislature (chapter 135, Laws 1907) enacted a recodification of the entire school laws of the state, repealing all former laws on the subject. In 1909 (chapter 242, Laws 1909) the Legislature passed an act entitled:

"An act to empower county commissioners and county superintendents to create school districts out of congressional townships where two-thirds of electors of said congressional townships petition therefor."

The provisions of this act are hereinbefore quoted. It will be observed that this act is not, and does not purport to be, an amendment of any then existing section of the Educational Code. It is in line, however, with preceding legislation requiring the boundary lines of school districts in newly organized counties and newly organized districts to conform to the bound-

ary lines of congressional townships whenever practicable. The act confers upon the qualified electors of any congressional township already a part of some school district comprising more than one congressional township the right, upon petition signed by two-thirds of the qualified voters of such congressional district, to require the county superintendent and the board of county commissioners to declare such congressional township a separate school district, and the county superintendent to appoint the necessary officers thereof. The act also provides that no such district shall be formed where the remaining portion of the former district shall be thereby left without reasonable school privileges, or in such shape as to render it impracticable for district purposes. No question is presented upon this appeal arising under this proviso of the act . We are of the view that this enactment, limited as it is to certain specific conditions, was independent of, and did not repeal or amend, section 69 of chapter 135, Laws of 1907, nor is it modified or repealed by chapter 171, Laws of 1915.

We are therefore of the view that the joint board acted within its authority under the statute of 1909 in creating a separate school district with boundaries corresponding with the congressional township upon the petition signed by two-thirds or more of the electors of such congressional township.

[2]   A writ of certiorari is not the proper remedy for a mere review of errors of irregularities in the attempted exercise of jurisdiction or authority conferred upon public officers or boards. The joint board having acted within the authority conferred by the statute, it is unnecessary to consider whether an appeal would lie from the action of the joint board. Section 760, Civil Code; State ex rel. v. Olson, 30 S. D. 573, at page 585, 139 N. W. 336; State ev rel, Clark v. Stakke, 22 S. D. 228, 117 N. W. 129.

[3]   Another question raised by appellant perhaps requires consideration. It is respondents' contention that the board of county commissioners as a body, and the county superintendent constitute a joint board, the validity of whose action requires the vote as a unit of the board of county commissioners or a majority thereof, together with the vote of county superintendent.

We think, however, that the correct rule is stated in McQuillin, Munic. Corp. vol. 2, § 600, where it is said:

"In order to constitute a legal meeting for the transaction of business of a body composed of two or more definite bodies, it is necessary that a majority of each of the separate bodies should be present. When the meeting has once been duly organized the identity of the component bodies forming it, in legal contemplation, disappears, and the vote of the majority of those constituting the joint body who are present controls, even though one of the body should leave before the vote is taken."

The members of the board of county commissioners and the county superintendent constitute a joint board, and a majority thereof may act. Civil Code, § 2474, provides:

"Words giving a joint authority to three or more public officers or other persons are construed as giving such authority to a majority of them, unless it is otherwise expressed in the act giving the authority."

In the statute which confers authority on the board of county commissioners and the county superintendent to act as a joint body in the formation of school districts it is not "otherwise expressed."

The order and judgment of the trial court are reversed, with directions to dismiss the writ.