### Donald ACHTIEN and Louise Achtien, Plaintiffs,

v.

### CITY OF DEADWOOD, a municipal corporation; Thomas Harmon, individually; and Paul Putz, individually, Defendants.

### Civ. No. 92–5009.

United States District Court, D. South Dakota, W.D.

Feb. 24, 1993.

Joseph Butler and Mark Marshall Bangs, McCullen, Butler, Foye & Simmons, Rapid City, SD, for plaintiffs.

Jerry D. Johnson, Banks, Johnson & Colbath, Rapid City, SD, for City of Deadwood.

Richard Helsper, Erickson, Helsper & O'Brien, Brookings, SD, for Harmon and Putz.

## MEMORANDUM OPINION

BATTEY, District Judge.

### PROCEDURAL HISTORY

Plaintiffs Donald Achtien and Louise Achtien (Achtiens) bring this action against the City of Deadwood; Thomas Harmon (Harmon), Assistant Attorney General of the State of South Dakota; and Paul Putz (Putz), Director/Deputy of the South Dakota Historical Preservation Center. Achtiens allege violations of their civil rights (42 U.S.C. § 1983). Achtiens' second amended complaint seeks damages and injunctive relief based upon an alleged violation of their procedural and substantive due process rights guaranteed by the fourteenth amendment to the United States Constitution (Count I). They further allege that the city of Deadwood violated article I, section 9 of the Constitution prohibiting bills of attainder (Count II). Finally, they allege a supplemental state law claim alleging that the city acted arbitrarily and capriciously in failing to issue a building permit for the construction of a hotel in the city of Deadwood (Count III).

Motions to dismiss under Fed.R.Civ.P. 12(b)(6) were converted by this Court to a motion for summary judgment pursuant to Fed.R.Civ.P. 56. The matter is now before the Court for resolution of the respective summary judgment motions.

### FACTS

Achtiens own a piece of real estate known as the "Syndicate Block" or the "Hole" located on a corner lot within the boundaries of the Deadwood Historic District. The building on that lot burned down in December 1987. Subsequent to the fire, Achtiens decided to build a hotel and convention center on the lot.

On April 10, 1989, Donald Achtien met with the Deadwood Historic Preservation Commission[1] to discuss his project. Appar-

---

1. In 1973 the South Dakota Legislature created a state office of history, the duties and responsibilities of which are spelled out in chapter 1–19A of the South Dakota Codified Laws (SDCL). A year later, the legislature authorized the governing bodies of any county or municipality to create a local historic preservation commission if the local governing body wished. SDCL 1–19B–2. If a city or county governing body chooses to create

a local historic preservation commission, the composition, funding, and responsibilities of that commission are spelled out in SDCL 1–19B. The city of Deadwood chose to create such a local historic preservation commission sometime prior to April 1989. Pursuant to the terms of SDCL 1–19B, the Deadwood Historic Preservation Commission (city historic commission) de-

ently, the historic commission made no objections to the Achtien proposal.

On April 12, 1989, Achtien and his architects for the project met with Putz, the director of the State Historic Preservation Center. Putz expressed three objections to the project: (1) that a planned height of six stories was too tall in comparison to the other buildings in the historic district; (2) that the Victorian architectural details of the building were too literal and would deceive on-lookers into believing that the building was of Victorian vintage rather than a recent construction; and (3) the street-level exterior of the building did not have enough windows.

After the meeting Putz sent a memo on April 12, 1989, to Cindy Howard, a member of the city historic commission. In the memo Putz reiterated to Howard the objections he had to Achtiens' project. On April 17, 1989, a joint meeting of the Deadwood City Commission and the city historic commission was held. Three of five members of the city historic commission were present. Achtiens orally requested a building permit based on their original plans for the building.

Pursuant to SDCL 1–19B–42,[2] the city historic commission was required to issue a certificate of appropriateness before the city could issue a building permit to Achtiens. Of the three members of the city historic commission who were present, the vote was 2 to 1 in favor of issuing the certificate of appro-

priateness. The city commission then voted to issue Achtiens a building permit.[3] Prior to the vote of the city commission in favor of issuing Achtiens a building permit, no written application was made, nor was a permit fee paid.

Two days later Putz phoned Harmon, who was an Assistant Attorney General for the state of South Dakota. His duties included interpreting statutes and providing legal advice to the State Historic Preservation Center. Putz informed Harmon that the city had issued a building permit to Achtiens and that, in Putz's opinion, the action of the city was in violation of SDCL 1–19A–11.1.[4] Harmon then phoned Tom Blair, the mayor of Deadwood. He advised Blair that in his opinion the action of the city in voting to issue a building permit to Achtiens was in violation of SDCL 1–19A–11.1 and could result in liability for the city and individual liability for the members of the commission who voted in favor of the permit. Harmon later reduced his opinion to writing in a letter dated April 20, 1989.

On April 19, 1989, Blair called a special meeting of the Deadwood City Commission. At this meeting, Blair informed the members of the commission of Harmon's opinion as to the applicable law. The city then voted to rescind the building permit as originally is-

lineated the boundaries of the Deadwood Historic District to include plaintiffs' lot.

2. SDCL 1–19B–42 provides in pertinent part:

After the designation of an historic district, no exterior portion of any building or other structure ... shall be erected, altered, restored, moved or demolished within such district until after an application for a certificate of appropriateness as to exterior features has been submitted to and approved by the historic district commission. **The municipality shall require such a certificate to be issued by the commission prior to the issuance of a building permit** or other permit granted for purposes of constructing or altering structures. A certificate of appropriateness shall be required whether or not a building permit is required.
SDCL 1–19B–42 (emphasis supplied).

3. The exact contours of what the city voted to allow are in dispute. The city argues that it voted only to allow Achtiens to conduct some

core drilling. Achtiens argue that the city voted to allow Achtiens to build the six-story structure which had been proposed, subject only to staged reviews of the working drawings as Achtiens' architect developed them to ensure compliance with the building code. For purposes of this motion, the Court views the facts in the light most favorable to the Achtiens as the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–89, 106 S.Ct. 1348, 1356–57, 89 L.Ed.2d 538 (1986); and Fed. R.Civ.P. 56(c). Therefore, the Court assumes that the city's vote was to allow Achtiens to build the six-story building.

4. SDCL 1–19A–11.1 outlined the statutory procedures necessary as a predicate to the undertaking of such a project as it may impinge upon the preservation of historic property. The Attorney General has ruled that the provisions of this statute apply to the issuance of a permit by a city affecting a designated historical district. S.D.Att'y Gen.Op. No. 89–41 (Dec. 29, 1989).

sued and limit the permit to one for the conducting of core drilling only.[5]

On May 22, 1989, a public hearing was held on the Achtien application. Achtiens received notice of the meeting and attended it together with their architects. Putz was also present. The purpose of the meeting was to renew the process for Achtiens' obtaining of a building permit. No building permit was issued.

On September 11, 1989, the city commission passed a comprehensive new zoning ordinance. One of the many provisions in the ordinance prohibits the construction of new buildings within the Deadwood Historic District which exceed ten percent above the mean average height of the other buildings located on the same block. This ordinance would prevent Achtiens from constructing the six-story building as originally proposed.

Achtiens commenced this action shortly thereafter.

## DISCUSSION

### A. SUMMARY JUDGMENT STANDARD

Under Rule 56 of the Federal Rules of Civil Procedure, a movant is entitled to summary judgment if he can "show that there is no genuine issue as to any material fact and that [he] is entitled to judgment as a matter of law." *Poller v. Columbia Broadcasting, Inc.*, 368 U.S. 464, 467, 82 S.Ct. 486, 488, 7 L.Ed.2d 458, 488 (1962). In determining whether summary judgment should issue, the facts and inferences from those facts are viewed in the light most favorable to the nonmoving party and the burden is placed on the moving party to establish both the absence of a genuine issue of material fact and that such party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*,

475 U.S. 574, 586–89, 106 S.Ct. 1348, 1356–57, 89 L.Ed.2d 538 (1986). Once the moving party has met this burden, the nonmoving party may not rest on the allegations in the pleadings, but by affidavit or other evidence must set forth specific facts showing that a genuine issue of material fact exists.

In determining whether a genuine issue of material fact exists, the Court views the evidence presented based upon which party has the burden of proof under the underlying substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 253, 106 S.Ct. 2505, 2513, 91 L.Ed.2d 202 (1986). Recently, the Supreme Court noted that "summary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed to 'secure the just, speedy, and inexpensive determination of every action.'" *Celotex Corp. v. Catrett*, 477 U.S. 317, 327, 106 S.Ct. 2548, 2555, 91 L.Ed.2d 265 (1986). The nonmoving party "must do more than show that there is some metaphysical doubt as to the material facts," *Matsushita*, 475 U.S. at 587, 106 S.Ct. at 1356, and "[w]here the record as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" *Id.*

The trilogy of *Celotex*, *Anderson*, and *Matsushita* provide the Court with a methodology in analyzing defendants' motions. Under this trilogy, it is incumbent upon the plaintiffs, based upon the showing set forth by the defendants, to establish significant probative evidence to prevent summary judgment. *See Terry A. Lambert Plumbing, Inc. v. Western Sec. Bank*, 934 F.2d 976, 979 (8th Cir.1991).

### B. PROCEDURAL DUE PROCESS CLAIM

■ The fourteenth amendment to the United States Constitution requires that be-

---

5. There is a factual dispute about this. The city argues that it voted on April 17 only to allow Achtiens to conduct core drilling and that the April 19 meeting just reiterated the limited nature of the permit. Achtiens argue that the city voted to allow them to construct the six-story building on April 17, and then changed the permit to one allowing only core drilling at the April 19 meeting. As discussed at n. 2, *supra*, this Court accepts Achtiens' version of the facts for purposes of deciding these motions.

At oral argument on this matter, defendants raised the argument that because the record is devoid of evidence that the city ever passed a resolution to withdraw the permit, the permit should still be considered to be in existence. This dispute is resolved in Achtiens' favor and the Court considers the permit to have been rescinded by the city for purposes of this motion.

fore the state or any of its political subdivisions can deprive a person of life, liberty, or property, the state must give the person due process under the law. U.S. Const. amend. XIV, § 1.[6] The due process clause provides both procedural due process and substantive due process protection. Procedural due process is commonly understood to require notice of the deprivation and an opportunity to be heard, though the opportunity to be heard need not always precede the deprivation. *See North Am. Cold Storage Co. v. City of Chicago,* 211 U.S. 306, 29 S.Ct. 101, 53 L.Ed. 195 (1908).

 Before Achtiens can claim entitlement to procedural due process, they must first demonstrate that they have a protected "property interest" within the meaning of the due process clause. *Littlefield v. City of Afton,* 785 F.2d 596, 600 (8th Cir.1986). The Constitution does not define "property" for purposes of the due process clause of the fourteenth amendment. *See Board of Regents of State Colleges v. Roth,* 408 U.S. 564, 576–78, 92 S.Ct. 2701, 2708–10, 33 L.Ed.2d 548 (1972). Therefore, to determine whether Achtiens had a property interest the Court must examine that interest as defined under the laws, regulations, and county and municipal ordinances of the state of South Dakota. *Id.; Littlefield,* 785 F.2d at 600. Based upon this analysis, the Court finds that Achtiens did not have a "property interest" in the action of the council as relates to their procedural due process claim. Their procedural due process claim fails.

The parties agree that under SDCL 1–19B–42, Achtiens were required to obtain a certificate of appropriateness from the city historic commission before the city could issue a building permit to Achtiens. The legality of the historic commission's two to one vote is challenged.

The city argues that an affirmative vote by only two members of the five-member commission in favor of issuing the certificate is insufficient to constitute a valid action by the commission. The Court agrees. Without a valid vote to issue a certificate of appropriateness from the city historic commission, the city could not issue a building permit and any attempt to do so would be void under state law.

Achtiens argue that because a majority of the commission members were present at the meeting, there was a valid quorum, three of five. Achtiens' position is that under the common-law quorum rule, a vote by a majority of the quorum, or two out of the three city historic commission members present at the meeting, is sufficient to bind the entire commission. Therefore, if the vote of the two members was sufficient, the certificate of appropriateness was validly issued and the vote of the city to issue the building permit was also valid, giving rise to Achtiens' "property interest" in the permit.

SDCL 2–14–15 provides as follows:

**2–14–15. Majority exercising joint authority.** Words giving a joint authority to three or more public officers or other persons are construed as giving such authority to a majority of them unless it is otherwise expressed in the act giving the authority.

**Source:** CivC 1877, § 2131; CL 1887, § 4765; RCivC 1903, § 2474; RC 1919, § 37; SDC 1939, § 65.0202(12).

It is the city's position that this statute abolishes the common-law quorum rule and replaces it with a rule requiring that a majority of the entire body to which joint authority is given must act in order to bind the body. Therefore, in the case of the five-member historic commission, three members must vote affirmatively in order to constitute a binding act of the commission.

Not surprisingly, Achtiens disagree. It is their position that once a quorum of three is

---

6. The fourteenth amendment to the United States Constitution provides as follows:

 All persons born or naturalized in the United States, and subject to the jurisdiction thereof, are citizens of the United States, and of the state wherein they reside. No state shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States, **nor shall any state deprive any person of life, liberty or property, without due process of law,** nor deny to any person within its jurisdiction the equal protection of the laws. U.S. Const. amend. XIV (emphasis supplied).

present, a majority of two is sufficient to bind the commission.

The Court has been unable to find any South Dakota cases on point.[7] The South Dakota Attorney General has interpreted this statute to require that a majority of the entire body must vote on a measure to validly bind the body. S.D.Att'y Gen.Op. 87–18. In addressing a question concerning the vote of a seven-member State Library Board, the Attorney General advised that there must be at least four affirmative votes in order for the Board to take any official action. Thus, the Attorney General's opinion construed SDCL 2–14–15 as a voting requirement, not a quorum requirement. A board could hold a meeting with a quorum—a majority of the board—but in order to conduct any business, a unanimous vote of those present would be required.

The South Dakota Supreme Court has held that opinions of the Attorneys General should be considered when construing statutes, but are not binding on the courts. *Simpson v. Tobin,* 367 N.W.2d 757, 763 (S.D. 1985) (citing *Tulare Indep. School Dist. No. 36 v. Crandon School Dist. No. 17,* 47 S.D. 391, 199 N.W. 451 (1924)).

The interpretation by the Attorney General has support in the case law of other states. In *Aliotta v. Gilreath,* 226 Ga. 263, 174 S.E.2d 403 (1970), the Supreme Court of Georgia interpreted a statute that provided "[a] joint authority given to any number of persons, or officers, may be executed by a majority of them, unless it is otherwise declared." In *Aliotta,* a board of six aldermen was reduced to five by the death of one of the aldermen. The court held that, in order to take action as a board, there had to be a vote of a majority of the entire board: four out of six. The court held that a vote by merely a majority of the aldermen left, three out of the five, did not satisfy the requirements of the statute. *Aliotta,* 174 S.E.2d at 405–06.

In *State ex rel. Stephan v. Board of County Commrs.,* 244 Kan. 536, 770 P.2d 455 (1989), the Supreme Court of Kansas inter-preted a statute worded identically to SDCL 2–14–15. The *Stephan* court held that the Kansas statute was not a quorum requirement, but rather a voting requirement, finding a distinction between the requirements for holding a legal meeting of a collective body and the voting requirements imposed on that body once a legal meeting is found to exist. The court interpreted the statute to require a vote of a majority of the entire body. Thus, although a quorum could be formed with a majority of the body, the entire quorum would have to vote unanimously in favor of a measure in order to bind the body. *Stephan,* 770 P.2d at 458–60. *See also Union Bank & Trust Co. v. Penwell,* 99 Mont. 255, 42 P.2d 457 (1935) (holding a statute identical to SDCL 2–14–15 as requiring at least a majority of the entire board of trustees).

Achtiens cite an article in 2 Am.Jur.2d *Administrative Law* § 196 (1962) in support of their position. This authority states that statutes such as SDCL 2–14–15 "do not alter the rule that the action of a majority of a quorum, although not a majority of the full board or commission, is action of the agency." However, this generalization is only as good as the authority on which it rests.

The article cites *People ex rel. Hoffman v. Hecht,* 105 Cal. 621, 627, 38 P. 941, 943 (1895), as support for its generalization about the affect of joint authority statutes on the common-law quorum rule. But the *Hecht* decision presented the question of whether unanimous action taken by thirteen members of a fifteen-member board was a valid action of the board. *Id.* at 623–24, 38 P. at 942. Thus, the *Hecht* court was not faced with the question of whether action by a minority of the board which nonetheless constituted a majority of a quorum was a valid action of the board. Furthermore, the *Hecht* court made the following statement which belies the characterization of this decision in the cited article:

We reach the following conclusion:

7. *Merchants' Nat'l Bank v. McKinney,* 2 S.D. 106, 48 N.W. 841 (1891) and *State ex rel. Woodcock v. Chitty,* 40 S.D. 164, 166 N.W. 633 (1918) cited by the parties are factually different and offer neither party authority for their respective positions.

1. The 13 [board members], *constituting as they do a majority of all the members of the board*, were competent to organize and act as a board ... under the constitution and law, and may lawfully prepare and propose a charter for the city and county of San Francisco.

*Id.* at 630, 38 P. at 944 (emphasis added). The other authorities relied upon by the author of the article cited by Achtiens are likewise unpersuasive, either because the facts did not present a situation where a minority of the entire board acted, *Louisville & Jefferson County Planning & Zoning Comm'n v. Ogden*, 307 Ky. 362, 210 S.W.2d 771 (1948), or because the language of the statute was not the same as SDCL 2–14–15, *E.C. Olsen Co. v. State Tax Comm'n*, 109 Utah 563, 168 P.2d 324 (1946); and *Brown & Root, Inc. v. Dunkelberger*, 196 Okl. 116, 162 P.2d 1018 (1945).

This Court therefore holds that SDCL 2–14–15 required that at least three members of the Deadwood Historic Preservation Commission must vote in favor of issuing the certificate of appropriateness to Achtiens before a certificate could be validly issued. Because only two of the five members of the city historic commission voted in favor of issuing the certificate, the vote to issue the certificate was void.

A certificate of appropriateness not having been issued, the vote of the Deadwood City Commission to issue Achtiens a building permit was also void. *See* SDCL 1–19B–42 (requiring a certificate of appropriateness from the local historic preservation commission before a municipality can issue a building permit for an area within an historic district). Achtiens have no protectible due process property interest in a void action of the city. *See Gunkel v. City of Emporia*, 835 F.2d 1302, 1303–05 (10th Cir.1987) (holding that a

building permit issued in violation of city ordinances did not give rise to a protectible due process property interest where plaintiff had failed to show that the pertinent ordinances were enforced only selectively); and *Maasjo v. McLaughlin School Dist. 15–2*, 489 N.W.2d 618, 621–24 (S.D.1992) (holding that a school district's contract with plaintiff, executed in violation of a statute requiring plaintiff to be a qualified superintendent, did not give rise to a protectible due process property right in the plaintiff).

■ There is another reason why Achtiens did not possess a property right in the permit approved on April 17, 1989. Reference has been made to the lack of compliance with SDCL 1–19A–11.1 (*see* n. 4). Defendants argue that without such compliance the issuance of the building permit was void. Achtiens argue that the statute simply does not apply. In any event, whether the statute does or does not apply is somewhat academic. The uncertainty of its application and the opinion of the Attorney General provides ample reason for the city to reconsider the building permit issue. At the reconsideration meeting Achtiens received all the process to which they were due.[8]

## C. SUBSTANTIVE DUE PROCESS CLAIM

■ In addition to the procedural due process claim, Achtiens allege that the actions of all the defendants violated their rights to substantive due process guaranteed by the federal Constitution. U.S. Const. amend. XIV, § 1.[9] In order to show that their substantive due process rights have been violated, Achtiens must show that the city acted in a truly irrational, truly egregious manner. This standard requires more than a showing that the government decision was arbitrary or capricious. *Chesterfield*

8. The defendants raised another argument independent from the voting issue for why the Court should hold that Achtiens had no due process property interest in the building permit. Defendants argue that in order to be entitled to the permit, Achtiens had to have complied with the Uniform Building Code, adopted by the city, which required Achtiens to have submitted a formal application, final plans and specifications, and to have paid a permit fee. The Court does not reach this issue because of its conclusion that

the vote of the historic commission was invalid. However, the Court notes that it would have been within the city's discretion to waive the requirements of the building code. *City of Mobridge v. Brown*, 39 S.D. 270, 164 N.W. 94 (1917).

9. *See* n. 6, *supra*, for the text of the fourteenth amendment.

*Dev. Corp. v. City of Chesterfield*, 963 F.2d 1102, 1103–05 (8th Cir.1992) (expressly adopting the standard for substantive due process claims set out in the concurrence in *Lemke v. Cass County, Neb.*, 846 F.2d 469, 471–73 (8th Cir.1987)); and *Myers v. Scott County*, 868 F.2d 1017, 1019 (8th Cir.1989). To apply a lesser standard (such as being arbitrary or capricious) would convert every violation of state law into a federal constitutional tort. A substantive due process violation does not focus so much on the nature of the right violated, as on the nature of the governmental action taken. It is premised on the proposition that there are some governmental actions which are constitutionally prohibited regardless of the process utilized. An error by the city concerning the application of state law, in and of itself, does not create a substantive due process violation. *Chesterfield Dev. Corp.*, 963 F.2d at 1105.

█ The city alleges that its motivation in rescinding Achtiens' building permit was that it believed the permit was void because the city had not complied with SDCL 1–19A–11.1.[10] Achtiens allege that the city's motivation was to avoid legal liability of the city and those of the city commission who voted for the permit in violation of SDCL 1–19A–11.1. Based on the dispute over the true motivation of the city in rescinding the permit, Achtiens allege that a genuine issue of material fact is created which defeats the city's motion for summary judgment. *See Marks v. City of Chesapeake, Va.*, 883 F.2d 308, 312 (4th Cir.1989) (stating that when parties dispute the state's true motivation behind an act which is alleged to have deprived plaintiff of his substantive due process rights, a factual question is created).

However, even assuming Achtiens' assertion as to the city's motivation is correct (as this Court must do under Fed.R.Civ.P. 56), the Court finds that there is not a violation of Achtiens' substantive due process rights. The theory of substantive due process is properly reserved for truly egregious and extraordinary cases. *Chesterfield Dev. Corp.*, 963 F.2d at 1105; *Myers*, 868 F.2d at 1019; *Lemke*, 846 F.2d at 471–73 (Arnold, J., concurring). This is not such a case. If the city had decided to rescind Achtiens' permit for an irrational reason completely unrelated to the merits of the permit application, a substantive due process claim would exist. If, for example, the city made its decision by flipping a coin or if the city had decided to apply zoning laws to citizens based on the letter of the alphabet with which their names began, then a substantive due process claim would exist. *See Chesterfield Dev. Corp.*, 963 F.2d at 1104; *Lemke*, 846 F.2d at 472.

Here, according to Achtiens' own characterization of the facts, the city rescinded the permit because it was afraid of being sued.[11] The city's fear was based on a perception that SDCL 1–19A–11.1 applied to its permitting actions in the Deadwood Historic District and the city had not complied with that statute in voting to issue Achtiens' permit. Even if the city was in error as to the applicability of SDCL 1–19A–11.1, and thus its fear of being sued turned out to be groundless, this would be no more than an error of state law. The error would not rise to the level of a constitutional deprivation of substantive due process rights. *Chesterfield Dev. Corp.*, 963 F.2d at 1105. A general fear of litigation is rationally related to the decisions which boards and commissions make. Such fear was rationally related in this case. Accordingly, the city's motion for summary judgment on the Achtiens' substantive due process claim is granted.[12]

10. The Court does not need to reach the question of whether SDCL 1–19A–11.1 applies to the permitting actions of municipalities, although as noted, the Attorney General has so ruled.

11. Using the process of hindsight, this fear may have been well founded. A few months later the Attorney General issued Op. 89–41 (Dec. 29, 1989). Had that opinion determined the applicability of SDCL 1–19A–11.1 to a project such as this, the city would have been duty bound to apply the Attorney General's interpretation of the law. To do otherwise might give rise to a claim that the commission acted arbitrarily and capriciously, thereby giving rise to a cause of action based on state law.

12. The Court notes that, while the validity of the building permit under SDCL 1–19A–11.1 is an issue which the Court has not reached, the Court has decided that the permit was void for other reasons. *See* discussion of Achtiens' procedural due process claim, *supra*.

D. QUALIFIED AND ABSOLUTE IMMUNITY CLAIMS OF HARMON AND PUTZ

Harmon and Putz argue that they should not be held liable because they had no personal involvement and because they did not cause the Achtiens' claimed deprivation. They further claim protection under either qualified or absolute immunity.

The Court's conclusion that Achtiens' procedural and substantive due process rights have not been violated is dispositive of the immunity claims asserted by Harmon and Putz. *Cf. Clay v. Conlee*, 815 F.2d 1164, 1169 (8th Cir.1987) (holding that where probable cause for an arrest existed, the arrest would not constitute a deprivation of any federal constitutional right so as to give rise to a cause of action under 42 U.S.C. § 1983). Accordingly, the Court need not address the immunity issues. Harmon and Putz are entitled to a dismissal of plaintiffs' claims based on this Court's analysis of procedural and substantive due process.

E. BILL OF ATTAINDER CLAIM

Finally, Achtiens assert that the city violated the bill of attainder clause of the federal Constitution. U.S. Const. art. I, § 10.[13] Achtiens argue in this respect that the city violated their rights when it rescinded the building permit it had voted to issue Achtiens and again when it passed the zoning ordinance on September 11, 1989 (limiting the height of buildings within the historic district).[14] Achtiens cite *Davis v. City of Kinloch*, 752 S.W.2d 420 (Mo.Ct.App.1988) in support of their allegation that revocation of a permit without a hearing is a bill of attainder. In addition, Achtiens argue that the zoning ordinance was specifically targeted toward Achtiens as Achtiens' permit was the only building permit pending at the time. They argue that the city passed the zoning

ordinance to punish them; hence, the bill of attainder.

The city counters that the ordinance was not a bill of attainder because the ordinance was generally applicable to all citizens and did not single out a single person or identifiable group of persons to which it applied. The city also argues that the ordinance was not punitive. The city further argues that the rescinding of the permit also does not constitute a bill of attainder.

■ A bill of attainder is a "law that legislatively determines guilt and inflicts punishment upon an identifiable individual without provision of the protection of a judicial trial." *Nixon v. Administrator of Gen. Servs.*, 433 U.S. 425, 468, 97 S.Ct. 2777, 2803, 53 L.Ed.2d 867 (1977). The Court notes the ingenuity of Achtiens' counsel in the attempt to sweep away Deadwood's zoning ordinance with the broad broom of "bill of attainder." Under the facts of this case, the broom sweeps too broadly.

■ In order for the city's zoning ordinance to constitute a bill of attainder, it must apply only to an individual or an identifiable group, and the purpose behind the ordinance must be to punish without benefit of a judicial trial. *See Selective Serv. Sys. v. Minnesota Pub. Interest Research Group*, 468 U.S. 841, 846, 104 S.Ct. 3348, 3352, 82 L.Ed.2d 632 (1984). Whether the purpose of the ordinance is to punish can be measured by an historical test, a motivational test, and a functional test. *See Selective Serv. Sys.*, 468 U.S. at 852, 104 S.Ct. at 3355; *Nixon*, 433 U.S. at 474, 475–76, 478, 97 S.Ct. at 2805–08.

■ *Selective Serv. Sys.* held that " 'mere denial of a noncontractual government benefit' " was beyond the scope of those penalties historically attributed to bills of attainder. *Id.* 468 U.S. at 853, 104 S.Ct. at 3355.

**13.** There are two clauses prohibiting bills of attainder in the Constitution. The first prohibits Congress from enacting bills of attainder. U.S. Const. art. I, § 9. The second applies to states and reads in pertinent part as follows:

No state shall enter into any treaty, alliance or confederation; grant letters of marque and reprisal; coin money; emit bills of credit; make anything but gold and silver coin a tender in

payment of debts; pass any bill of attainder, ex post facto law, or law impairing the obligations of contracts or grant any title of nobility. U.S. Const. art. I, § 10.

**14.** At oral argument the Achtiens conceded that if there was no property interest in the building permit, the zoning ordinance did not constitute a bill of attainder.

Achtiens had no contractual right to build their proposed building within the historical district. *See, e.g., ABN 51st St. Partners v. City of New York,* 724 F.Supp. 1142, 1156 (S.D.N.Y.1989) (zoning ordinance held to not be a bill of attainder). Claims that city ordinances are bills of attainder have failed in other contexts. *Garner v. Board of Pub. Works of City of Los Angeles,* 341 U.S. 716, 71 S.Ct. 909, 95 L.Ed. 1317 (1951) (city ordinance requiring city employees to take an oath that they had not advocated or belonged to organization advocating overthrow of government by force was not invalid as a bill of attainder); *Little v. City of North Miami,* 805 F.2d 962 (11th Cir.1986) (resolutions, not being "law," are not bills of attainder); *Gardner v. City of Columbus, Ohio,* 841 F.2d 1272 (6th Cir.1988) (city parking ordinance did not constitute a bill of attainder); *Grant v. City of Chicago,* 594 F.Supp. 1441 (N.D.Ill.1984) (ordinance authorizing immobilization of motor vehicle with ten or more outstanding traffic violations is not a bill of attainder).

█ Achtiens have not shown that the purpose of the ordinance was punitive. The ordinance does not satisfy the historical test for a bill of attainder. *See Nixon,* 433 U.S. at 474, 97 S.Ct. at 2805. Neither does the ordinance satisfy the motivational test for a bill of attainder. The motivational test requires the Court to examine the legislative record to determine if a punitive legislative intent is evidenced. *Id.* at 478, 97 S.Ct. at 2808. The city provided the minutes of the meetings at which the ordinance in question was considered and passed. No punitive purpose appears from this record.

█ Finally, the ordinance does not satisfy the functional test for a bill of attainder. Under the functional test, the Court must analyze whether the law "viewed in terms of the type and severity of burdens imposed, reasonably can be said to further nonpunitive legislative purposes." *Id.* at 475–76, 97 S.Ct. at 2806–07. Only if no reasonable, nonpunitive purposes appear is the conclusion that the ordinance was intended to punish the

Achtiens warranted. *Id.* at 476, 97 S.Ct. at 2807.

The ordinance [15] consists of 33 pages and numerous sections. It regulates subjects as diverse as city parks, residences, parking, and camping, just to name a few. The height restriction applicable to the historic district consists of only one small subsection of section 6.5 of the ordinance. The ordinance does not prevent Achtiens from constructing a building on their lot providing it is constructed pursuant to the zoning ordinance. The motivation of the city to limit the height of buildings within the historical district contrary to Achtiens' desires does not raise the ordinance to the status of a bill of attainder. In the enactment of the ordinance the city commission was merely carrying out a zoning function authorized by state law. Furthermore, the ordinance contains comparable height restrictions on other buildings outside the historic district which do not apply to the Achtiens.

The Court finds that the ordinance in question serves the nonpunitive purpose of providing an orderly and comprehensive scheme of development for the city of Deadwood. Accordingly, the ordinance does not constitute a bill of attainder.

█ As to whether the city's rescinding the Achtiens' permit constitutes a bill of attainder, the Court recognizes that such action may, under certain circumstances, constitute a bill of attainder. *See Davis,* 752 S.W.2d at 425 (holding that a city's revocation of plaintiff's restaurant license shortly after plaintiff filed a suit against the city could constitute a bill of attainder). However, this claim of Achtiens fails for the same reason as does their claim concerning the city ordinance: they have not demonstrated a punitive purpose behind the action.

According to Achtiens' own version of the facts, the reason the city rescinded the Achtiens' permit was because the city believed it had violated SDCL 1–19A–11.1 in voting to issue the permit and feared it would

---

**15.** The ordinance was enacted pursuant to SDCL 9–12–13 which provides, "Every municipality shall have power to adopt a zoning ordinance as provided by Title 11." It is entitled, "Zoning Ordinance, City of Deadwood, South Dakota, Ordinance Number One." As with any ordinance, it is subject to the referendum. SDCL 9–20.

be sued. This purpose has nothing to do with punishing Achtiens. Summary judgment is granted to the city on Achtiens' bill of attainder claim.

## F. STATE LAW CLAIMS

Having granted summary judgment to defendants on all of the Achtiens' federal claims, all that remains are Achtiens' state law claim and the claims based on the South Dakota Constitution. All defendants urge the Court to dismiss these claims.

This Court is granted supplemental jurisdiction over state law claims which form part of the same case or controversy as claims over which this Court has original jurisdiction. 28 U.S.C. § 1367.[16] However, this Court also has discretion to dismiss state law claims over which it has only supplemental jurisdiction if the Court has dismissed all claims over which the Court had original jurisdiction. 28 U.S.C. § 1367(c)(3). A dismissal will not affect any period of limitation for any state law claims in view of the preemptive effect of 28 U.S.C. § 1367(d).

■ Where all the claims over which a district court had original jurisdiction have been dismissed, and where the state law claims within a court's supplemental jurisdiction involve questions of zoning authority under municipal ordinances, it is particularly appropriate for a court to exercise its discretion to dismiss the state law claims. *See Condor Corp. v. City of St. Paul,* 912 F.2d 215, 220 (8th Cir.1990), *vacated on other grounds,* 943 F.2d 860 (8th Cir.1991) (citing *United Mine Workers of America v. Gibbs,* 383 U.S. 715, 726–27, 86 S.Ct. 1130, 1139, 16 L.Ed.2d 218 (1966)). Accordingly, the Court dismisses Achtiens' state law claims without prejudice.

## CONCLUSION

Summary judgment is granted to defendants on all issues. Achtiens' claims based on the United States Constitution and 42 U.S.C. § 1983 are dismissed with prejudice on the merits. Achtiens' claims based on state law and the South Dakota Constitution are dismissed without prejudice. A judgment shall issue forthwith.

---

**16.** Section 1367, which combined and codified the previous concepts of pendent and ancillary jurisdiction as "supplemental jurisdiction," provides in pertinent part as follows:

(a) Except as provided in subsections (b) and (c) or as expressly provided otherwise by Federal statute, in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.
\* \* \* \* \* \*

(c) The district courts may decline to exercise supplemental jurisdiction over a claim under subsection (a) if—

. . . . .

(3) the district court has dismissed all claims over which it has original jurisdiction, or

. . . .

(d) The period of limitations for any claim asserted under subsection (a), and for any other claim in the same action that is voluntarily dismissed at the same time as or after the dismissal of the claim under subsection (a), shall be tolled while the claim is pending and for a period of 30 days after it is dismissed unless State law provides for a longer tolling period.